DISCIPLINARY COUNSEL v. BROEREN.

[Cite as *Disciplinary Counsel v. Broeren,*
115 Ohio St.3d 473, 2007-Ohio-5251.]

(No. 2007–0333—Submitted July 10, 2007—Decided October 10, 2007.)

**Per Curiam.**

{¶ 1} Respondent, P. Robert Broeren Jr. of Mount Vernon, Ohio, Attorney Registration No. 0069166, was admitted to the practice of law in Ohio in 1998.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for six months based on findings that he neglected a client's case, attempted to cover up the neglect, failed to return the client's file on request, and failed to cooperate in the ensuing disciplinary investigation. Respondent objects to the board's report, disputing the findings of neglect and dishonesty, urging us to give mitigating effect to the fact that he suffers from attention deficit disorder, and arguing for a stay of the six-month suspension. On review, we overrule respondent's objections, agree

that he committed professional misconduct as found by the board, and hold that a six-month suspension is appropriate.

{¶ 3} Relator, Disciplinary Counsel, charged respondent in a two-count complaint with violations of the Code of Professional Responsibility, including DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter), and 9–102(B)(4) (requiring a lawyer to promptly deliver requested property that the client is entitled to receive), and with a violation of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of misconduct). A panel of the board heard the cause and, based on the parties' extensive stipulations and other evidence, found the cited misconduct and recommended a six-month suspension. The board adopted the panel's findings and recommendation.

## Misconduct

{¶ 4} Respondent graduated from law school in 1994 and has since been admitted to the practice of law in Virginia and the District of Columbia in addition to Ohio. He has been in practice in Knox County, Ohio, since 2002, first practicing privately and later also as a part-time assistant county prosecutor. Since 2005, respondent has been a full-time assistant county prosecutor.

### The Lawsuit Underlying the Charges of Misconduct

{¶ 5} In September 2003, Selective Med Components ("Selective Med") sued PMR Products, Inc. ("PMR"), a medical-device distributor in Albany, New York, for $2,097.78 worth of electronic components that PMR had ordered and received but not paid for. In November 2003, after having already filed an answer and a counterclaim on his company's behalf, PMR President William Lubin hired respondent to defend the company against Selective Med's suit. Lubin instructed respondent to contain the costs of PMR's defense in view of the small amount at stake.

{¶ 6} In February 2004, the Mount Vernon Municipal Court granted Selective Med's motion to compel discovery, which respondent had not opposed. Selective Med and PMR thereafter continued to pursue discovery; however, Selective Med still maintained that respondent was not responding completely. Selective Med moved for sanctions, and on April 21, 2004, the municipal court granted $500 in sanctions against PMR.

{¶ 7} Lubin testified that respondent did not tell him of the order for sanctions. Lubin also claimed that respondent did not notify him about a June 11, 2004 trial until the day before, when Lubin could not make arrangements in time to attend. Lubin also insisted that respondent did not tell him of the $2,097.78 judgment entered against him when, despite respondent's motion for a continuance, the

trial went forward without Lubin and respondent appeared but lost the case. Finally, Lubin complained that respondent did not tell him of a July 15, 2004 court order scheduling a judgment-debtor examination for August 20, 2004.

{¶ 8} Lubin did not appear at the August 20 debtor examination, and the municipal court issued an order for him to show cause on September 17, 2004, why he should not be held in contempt. Lubin received notice of this order from the court and wrote to the municipal judge, asking him to set aside the judgment against PMR and to continue the date of the contempt hearing. The judge nevertheless held the September 17 hearing as scheduled, and when Lubin did not appear, the judge found him in contempt and ordered him to pay Selective Med another $500.

*Respondent's Response to the Disciplinary Investigation*

{¶ 9} Lubin complained to relator about respondent's representation. In December 2004, relator sent respondent a letter of inquiry about the grievance, which respondent received but to which he did not reply in the time requested. He also did not reply to a second letter or appear in response to a subpoena in March 2005. Respondent did, however, eventually respond to Lubin's claims of neglect and participate in the disciplinary proceedings.

{¶ 10} Respondent did not deny having failed to alert Lubin about the first order for sanctions. He insisted, however, that he had notified Lubin of various other proceedings. He presented copies of a letter that he claimed to have sent to Lubin on May 7, 2004, to advise of the June 11 trial date and another letter, which he claimed to have sent on June 11, 2004, to advise about the loss at trial. In addition, he presented two more letters: one as proof that he sent Lubin a copy of the June 11 judgment entry against Lubin, the other as proof that he sent Lubin notice of the August 20 debtor exam. The body of a letter dated June 16, 2004 reads:

{¶ 11} "Enclosed is a copy of the Court's Final Order in regards to this matter, which I received in the mail today. Under Ohio Rules, you will have 28 days from the date of the entry to file an appeal. I will be in Ireland from June 30, 2004—July 11, 2004, so please contact me before June 30 to discuss this.

{¶ 12} "Enclosed is an invoice for service rendered through today. Please note that I have not yet received payment for the January and March 2004 invoices."

{¶ 13} The body of the next letter, dated June 18, 2004, reads:

{¶ 14} "Enclosed is a copy of a Judgment Debtor exam which Selective Med has scheduled on August 20, 2004, which I received in the mail today. As I noted in my letter of June 16, 2004, I will be in Ireland from June 30, 2004—July 11, 2004, so please contact me before June 30, 2004 or after July 11, 2004 to discuss this."

{¶ 15} Respondent produced these letters in a facsimile to Lubin on September 17, 2004, in response to Lubin's expressed dissatisfaction with his representation. The board, however, concluded that neither letter had been written at the time asserted, mainly because of its suspicions over the June 18 letter. The June 18 letter that supposedly notified Lubin of the August 20 debtor exam was dated nearly one month before July 15, 2004—the date on which the court ordered the debtor exam. Respondent tried to explain this inconsistency at the hearing, proposing that he must have mistakenly placed a June 18 date on the letter when he wrote the letter in July. The reference to his "June 30, 2004—July 11, 2004" vacation in the letter, however, makes this explanation incredible.

{¶ 16} To refute the implication that he had fabricated the June 18 letter, respondent also claimed that the information about his vacation was simply another mistake. He suggested that he must have inadvertently failed to delete that sentence in haste after using the June 16 letter as an electronic template from which he had "cut and pasted." We also reject this explanation.

{¶ 17} Respondent's story about misdating the June 18 letter is inconsistent, and we do not believe that he would also have been as careless as to leave in the reference to his already-completed vacation when he managed to take out of the June 16 template the two-sentence paragraph that followed it. Indeed, respondent actually changed the sentence about his vacation by adding to the June 18 letter the italicized text: *"As I noted in my letter of June 16, 2004,* I will be in Ireland from June 30, 2004—July 11, 2004, so please contact me before *June 30, 2004 or after July 11, 2004* to discuss this."* These additions, for which respondent admitted he did not "have a good answer" at the panel hearing, are proof that respondent did not draft the June 18 letter and, by implication, the June 16 letter at the times he has asserted.

### Respondent's Response to Successor Counsel

{¶ 18} Lubin obtained new counsel, New York attorney Richard Doling, after the show-cause order. Doling wrote to respondent five times beginning in October 2004 and ending in January 2005, each time asking for information on the case, and in November, demanding the PMR file. Respondent did not reply to any of Doling's letters or forward the file. Respondent explained at the hearing that PMR had paid only $135 of his legal bill and he thought he was justified in keeping the file until PMR paid him in full.

{¶ 19} Respondent concedes that he violated DR 9–102(B)(4) by failing to deliver PMR's file and that he violated Gov.Bar V(4)(G) by failing to timely respond to relator's investigative inquiries. We accept these concessions and find that respondent committed this misconduct.

{¶ 20} We reject, however, respondent's arguments that relator failed to prove the violations of DR 6–101(A)(3) and 1–102(A)(4) with clear and convincing evidence, as required by Gov.Bar R. V(6)(J). As we have just discussed, the record amply justifies the board's conclusions that respondent neglected to appropriately advise his client of the proceedings in the PMR case and then fabricated one or more letters to conceal his neglect. In addition to the obvious discrepancies in timing and content of the June 16 and 18 letters, we infer from respondent's repeated failure to answer Doling's letters that he simply refused at times to attend to professional responsibilities having anything to do with Lubin, whom he regarded as a contentious client, and then tried to avoid the consequences. We thus overrule these two objections and find that respondent also violated DR 1–102(A)(4) and 6–101(A)(3).

### Sanction

{¶ 21} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993.

{¶ 22} Respondent violated duties to his client by failing to conscientiously represent PMR and to return the PMR case file, to the legal profession by failing to cooperate in the disciplinary investigation, and to the public by failing to exhibit the highest standards of honesty and integrity. At a minimum, respondent's misconduct caused his client unnecessary consternation. It may have irreparably compromised PMR's legal defenses and been integral to the contempt citations against his client. Furthermore, we generally impose a six-month license suspension when a lawyer engages in this type of neglect and dishonesty. *Disciplinary Counsel v. Stollings*, 111 Ohio St.3d 155, 2006-Ohio-5345, 855 N.E.2d 479 (six-month suspension imposed on an attorney who misled a client about the dismissal of the client's case and the neglect that had caused the dismissal); *Cincinnati Bar Assn. v. Florez*, 98 Ohio St.3d 448, 2003-Ohio-1730, 786 N.E.2d 875 (six-month suspension imposed on an attorney who neglected his client's case and provided fabricated evidence to an investigator); *Disciplinary Counsel v. Wallace* (2000), 89 Ohio St.3d 113, 729 N.E.2d 343 (six-month suspension imposed for an attorney's neglect of a client's case and his repeated attempts to mislead the client about it); *Columbus Bar Assn. v. Bowen* (1999), 87 Ohio St.3d 126, 717 N.E.2d 708 (six-month suspension imposed on an attorney who failed to tell his

client that her personal-injury lawsuit had been dismissed with prejudice for want of prosecution).

{¶ 23} As mitigating and aggravating factors, the board found that respondent did not cooperate in the disciplinary proceedings at first but eventually did cooperate, that he acknowledged some of his misconduct but not all of it, and that his client suffered some financial harm but was not particularly vulnerable. See BCGD Proc.Reg. 10(B)(1)(e), (g), and (h), and (2)(d). To the extent these factors exist in this case, they offset one another. The other mitigating factors are that respondent has no prior disciplinary record and has established his good character and excellent professional reputation apart from his misconduct. See BCGD Proc.Reg. 10(B)(2)(a) and (e). These factors, however, do not outweigh the aggravating effect of respondent's having submitted false evidence and having acted out of self-interest in trying to cover up his misconduct. See BCGD Proc.Reg. 10(B)(1)(b) and (f).

{¶ 24} Respondent argues that the balance is nonetheless tipped in his favor by BCGD Proc.Reg. 10(B)(2)(g), which recognizes the mitigating effect of proof that (1) a lawyer has been diagnosed with a mental disability by a qualified health-care professional, (2) the mental disability contributed to cause the misconduct, (3) the lawyer has undergone a sustained period of successful treatment, and (4) a qualified health-care professional has released the lawyer to return, under specified conditions if necessary, to the competent, ethical, and professional practice of law. BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). Respondent has not met this burden.

{¶ 25} Respondent presented a report from Gideon L. King, M.D., who diagnosed respondent with attention deficit disorder ("ADD") in April 2006, prescribed medication for him, and has since observed favorable results. This disorder causes the afflicted person to be inattentive to detail and predisposed to making careless mistakes. According to Dr. King, the condition probably compromised respondent's ability to practice law. In a second report, Associate Director of the Ohio Lawyers Assistance Program ("OLAP") Stephanie Krznarich confirmed the diagnosis and also advised that respondent had entered into an OLAP recovery contract, with which he was in compliance.

{¶ 26} Neither of these medical reports, however, specifically established that respondent's ADD contributed to cause his neglect of the PMR case in 2004. Moreover, neither report suggested that ADD prompts acts of duplicity such as those that respondent perpetuated that year. Respondent has thus failed to satisfy BCGD Proc.Reg. 10(B)(2)(g)(ii), and we need attribute no mitigating effect to the fact that he has ADD. This objection is also overruled.

{¶ 27} In his final objection, respondent argues that because he did not violate DR 1–102(A)(4) or 6–101(A)(3) and has ADD, we should temper the disposition

recommended by the board and stay the six-month suspension. We have already dispensed with his claims that he did not commit the cited misconduct and that his mental disability qualifies as a mitigating factor. We thus impose the sanction warranted for respondent's misconduct—a six-month suspension.

{¶ 28} Respondent is hereby suspended from the practice of law in Ohio for six months. We further order that respondent pay $1,000, plus interest at the judgment rate, as restitution for the monetary sanctions that his client incurred as a result of his misconduct. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Phillip D. Lehmkuhl, for respondent.