COLUMBUS BAR ASSOCIATION *v*. WILLIAMS.

[Cite as *Columbus Bar Assn. v. Williams,*

129 Ohio St.3d 603, 2011-Ohio-4381.]

*Attorneys—Misconduct—Multiple violations of Rules of Professional Conduct,*
*including failing to act with reasonable diligence in representing a client*
*and failing to keep the client reasonably informed about the status of a*
*legal matter—Two-year suspension stayed on conditions.*

(No. 2010-0253—Submitted April 6, 2011—Decided September 7, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 09-082.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Lewis Eugene Williams Jr. of Columbus, Ohio,
Attorney Registration No. 0020686, was admitted to the practice of law in Ohio in
1974.  On October 12, 2009, relator, Columbus Bar Association, filed a complaint
charging respondent with neglecting client matters, failing to provide competent
representation, failing to reasonably communicate with clients, failing to
withdraw from representation when his physical or mental condition materially
impaired his ability to represent his clients, and failing to perform the obligations
of appointed counsel.

**{¶ 2}** On February 8, 2010, the Board of Commissioners on Grievances
and Discipline issued a report pursuant to Section 11(D) of the Rules and
Regulations Governing Procedure on Complaints and Hearings Before the Board
of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.")
recommending that this court accept the parties' consent-to-discipline agreement.
The parties had stipulated that respondent had violated numerous provisions of

the Ohio Rules of Professional Conduct and that a two-year suspension from the practice of law with the entire suspension stayed on conditions was the appropriate sanction.

{¶ 3} We twice remanded the matter to the board for further proceedings—first for correction of a clerical mistake in respondent's affidavit and then for consideration of a more severe sanction. 125 Ohio St.3d 1456, 2010-Ohio-2752, 928 N.E.2d 454; 126 Ohio St.3d 1571, 2010-Ohio-4502, 934 N.E.2d 346.

{¶ 4} On the second remand, the board appointed a panel to conduct a hearing, and the parties submitted stipulations of fact and misconduct. The panel adopted those stipulations and, after hearing testimony from respondent, his former treating psychologist, and two character witnesses, recommended that respondent be suspended from the practice of law for two years, all stayed on the condition that he commit no further misconduct, serve two years of monitored probation, comply with his Ohio Lawyers' Assistance Program ("OLAP") contract, refrain from alcohol and drug use, and submit to any drug testing requested by OLAP or relator. The board adopted the panel's report in its entirety, as do we.

## Misconduct

{¶ 5} The stipulated facts of the case show that in May 2007, respondent was appointed by the Franklin County Court of Common Pleas to appeal a man's conviction of rape, attempted rape, murder, and attempted tampering with evidence. Respondent filed a timely notice of appeal and requested extensions of time to have the trial transcript prepared and to file a brief. After the transcript was filed, respondent requested and received a second extension of time to file the appellate brief. When he failed to file a brief, the appellate court dismissed his client's appeal for want of prosecution. At the urging of the prosecuting attorney,

the court of appeals reopened the case and appointed new counsel to prepare and file a brief.

{¶ 6} Respondent acknowledges that at the very least, he should have filed an Anders brief on the client's behalf. He also admits that he failed to notify his client or the prosecutor that he did not intend to file a brief. He states that at the time of his appointment, he suffered from depression and routinely used marijuana, but he failed to seek treatment or to advise the court, the bar association, or anyone else that he was unable to execute his duties as an appointed attorney.

{¶ 7} With respect to count two, respondent was appointed to defend a man charged with aggravated robbery and aggravated murder in December 2007. Although respondent received notice of the trial date, he did not appear for trial, and he did not notify the court or his client that he would not appear. Respondent testified that when it came time for him to go to court, he just did not leave his office. The court ultimately appointed another attorney to represent the client.

{¶ 8} The parties stipulated and the board found that respondent's conduct with respect to each of these counts violates Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(a)(2) (requiring a lawyer to withdraw from representation when the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client), and 6.2 (permitting a lawyer to seek to avoid appointment by

a court to represent a person if representation of the client is likely to result in violation of the Ohio Rules of Professional Conduct or other law).

{¶ 9} We adopt these findings of fact and misconduct.

## Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 11} The parties stipulated and the board found that respondent's commission of multiple offenses and the vulnerability of the victims, both of whom faced serious criminal charges, are aggravating factors in this case. See BCGD Proc.Reg. 10(B)(1)(d) and (h).

{¶ 12} With respect to mitigating factors, respondent testified that the events giving rise to the complaint arose from an uncharacteristic lapse in his mental state in late 2007 and early 2008. He reported that during the early part of his career, he began to smoke marijuana regularly—a practice that he continued until he signed his OLAP contract on September 18, 2008—and was diagnosed with and successfully treated for depression in the early 1980s.

{¶ 13} Respondent testified that in 2007, he noticed that he was once again growing despondent—he suffered bouts of crying, became less productive, and could not force himself to do the work that needed to be done. In 2008, respondent had an informal discussion with Dr. Dennis Eshbaugh, his former treating psychologist, who had also provided expert testimony in some of respondent's capital-murder cases. Dr. Eshbaugh testified that while he did not formally diagnose respondent's mental state, he observed that respondent

4

exhibited all of the classic symptoms of clinical depression. At his urging, respondent consulted with his family doctor and obtained a prescription for an antidepressant. Respondent testified that within a month of starting this medication, his emotional state changed—he found that he was more focused and better equipped to cope with the pressures of his professional and personal life.

{¶ 14} In talking with Dr. Eshbaugh, respondent realized that his marijuana use was exacerbating his depression. At the urging of relator's bar counsel, respondent entered into an OLAP contract and professes that with the exception of a prescribed antidepressant, he has abstained from all drug use. The board observed, however, that respondent is not in full compliance with his OLAP contract, having attended only 67 or 68 of the 90 meetings he agreed to attend in 90 days. He also failed to seek outpatient treatment at Talbot Hall, as required by the contract, because he did not have health insurance and could not afford the required treatment.

{¶ 15} Dr. Eshbaugh testified that he began to work as an expert witness with respondent in capital cases around 2000 and found him to be very competent and accomplished. Based upon his conversation with respondent and rumors he had heard from other attorneys, Dr. Eshbaugh knew that respondent had problems in 2007 and 2008. But Dr. Eshbaugh believed that when he worked with respondent on another capital case beginning in late 2008, respondent was back to being himself—dedicated, conscientious, competent—and that his treatment for depression was effective.

{¶ 16} Respondent's longtime friend, attorney Robert L. Griffin, testified that respondent represented him in a real property matter in early 2007 and obtained excellent results. But when he attempted to refer a client to respondent in early 2008, respondent did not answer his e-mails or return his phone calls, so Griffin completed the representation without respondent's assistance. Later that year, Griffin received an e-mailed apology from respondent and subsequently

talked with respondent about his problems. In early 2009, Griffin referred a client with a real estate problem similar to his own to respondent, who competently handled the matter. Griffin testified that he would not hesitate to refer clients to respondent in the future.

{¶ 17} Respondent's final character witness was Janet Grubb, a retired Franklin County municipal court judge. She testified that she had worked with respondent in the public defender's office in the late 1970s and early 1980s and had observed respondent as he practiced before her during her 18 years on the bench. Judge Grubb stated that respondent was always prepared and in full command of his faculties when he appeared in her court and that he was a very competent criminal-defense attorney. She was shocked when she learned of respondent's misconduct, which was out of character for such a highly regarded attorney.

{¶ 18} Although the board found that respondent had failed to demonstrate that his depression qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g), the board found a number of mitigating factors, including respondent's (1) lack of prior disciplinary offenses in more than 37 years of practice, see BCGD Proc.Reg. 10(B)(2)(a), (2) lack of a selfish or dishonest motive, see BCGD Proc.Reg. 10(B)(2)(b), (3) full and free disclosure to relator and the board, and his full cooperation in the disciplinary proceedings, see BCGD Proc.Reg. 10(B)(2)(d), and (4) expressions of sincere remorse for his conduct.

{¶ 19} In their consent-to-discipline agreement, the parties stipulated that the appropriate sanction for respondent's misconduct was a two-year suspension, stayed on the conditions that respondent commit no further misconduct, fully comply with his OLAP contract, and pay the costs of this disciplinary action.

{¶ 20} Following the remand for consideration of a harsher sanction, the board again recommends that we impose the same sanction proposed by the parties, with the condition that during the stayed suspension, respondent serve a

two-year term of monitored probation, during which he shall (1) commit no further acts of misconduct, (2) comply with the terms of his OLAP contract and ensure that it remain in effect during his entire stayed suspension, and (3) submit to any drug-testing request made by OLAP or relator.

{¶ 21} In *Cleveland Metro. Bar Assn. v. Gresley*, 127 Ohio St.3d 430, 2010-Ohio-6208, 940 N.E.2d 945, we imposed a two-year suspension with the final six months stayed on an attorney who, among other things, had neglected a number of client matters, failed to reasonably communicate with the affected clients, failed to promptly deliver funds that the clients were entitled to receive, engaged in conduct that was prejudicial to the administration of justice, engaged in conduct that adversely reflected upon his fitness to practice law, and initially failed to cooperate in the resulting disciplinary investigation. Id. at ¶ 4-20, 27. Aggravating factors in *Gresley* included the respondent's selfish motive, his pattern of misconduct, the harm he caused to vulnerable clients, and his initial failure to cooperate in the disciplinary investigation. Id. at ¶ 22. And in mitigation, we found that the respondent had no disciplinary record, had relinquished his bankruptcy-court electronic-case-filing privileges for one year effective March 2010, and had complied with other bankruptcy-sanction orders, and that he had ultimately cooperated in the disciplinary process. Id.

{¶ 22} Respondent's conduct, while serious, was not as severe as Gresley's. It involved only two clients, compared to Gresley's seven, respondent fully cooperated in the disciplinary investigation, and he was not charged with conduct prejudicial to the administration of justice or adversely reflecting upon his fitness to practice law. In light of these factual differences, and the evidence demonstrating that no clients were harmed by respondent's conduct and that he has received effective treatment for his depression, ceased his use of illegal substances, and, by all accounts, returned to the competent, ethical, and

professional practice of law, we agree that the sanction recommended by the board will adequately protect the public from future misconduct.

{¶ 23} Accordingly, we suspend Lewis Eugene Williams Jr. from the practice of law for two years, all stayed on the conditions that he (1) commit no further acts of misconduct, (2) serve two years of monitored probation in accordance with Gov.Bar R. V(9), (3) refrain from alcohol and drug use, (4) fully comply with the terms of his OLAP contract and ensure that it remains in effect during his entire stayed suspension, and (5) submit to any drug testing requested by OLAP or relator. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent will serve the full two years. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel; and Terry Sherman, for relator.

Gerald G. Simmons, for respondent.

_____