COLUMBUS BAR ASSOCIATION *v.* WATSON.

**[Cite as *Columbus Bar Assn. v. Watson*, 132 Ohio St.3d 496, 2012-Ohio-3830.]**

*Attorney misconduct, including failing to promptly deliver funds that client is entitled to receive—One-year suspension, stayed on conditions.*

(No. 2011-2056—Submitted January 18, 2012—Decided August 28, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-048.

_____

**Per Curiam**.

{¶ 1} Respondent, David Charles Watson Jr. of Columbus, Ohio, Attorney Registration No. 0025989, was admitted to the practice of law in Ohio in 1985. On May 2, 2011, relator, Columbus Bar Association, filed a three-count complaint charging Watson with multiple violations of the Rules of Professional Conduct in his representation of three separate clients.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing at which it received numerous exhibits and heard testimony from relator's investigator, Watson, Watson's partner, Watson's psychiatrist, one of the affected clients, the judge who presided over one of the matters in which Watson allegedly engaged in misconduct, and two attorneys who represented the opposing parties in two of the investigated matters. During that hearing, relator withdrew some of the allegations in Count One of the complaint. Following the hearing, the panel issued a report finding that relator had proved by clear and convincing evidence that Watson had violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) with respect to Count One and 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from

the lawyer's own property) with respect to Counts Two and Three. But the panel also found that relator had not proved the remaining allegations of misconduct by clear and convincing evidence.

{¶ 3} Based upon the proven violations, the panel recommended that Watson be suspended from the practice of law for six months, but that the entire suspension be stayed on conditions. The board adopted the panel's findings of fact and misconduct, as well as the recommended sanction. We adopt the board's findings of fact and misconduct, but for the reasons that follow, we find that a one-year suspension, all stayed on the recommended conditions, is the appropriate sanction for Watson's misconduct.

**Misconduct**

{¶ 4} The evidence adduced at the panel hearing demonstrates that with respect to Count One, Watson received $250 from Teri Fravel (n.k.a. Pizzurro) and deposited it into his operating account. Relator alleged that the money was intended as a fee to refile a motion to reallocate parental rights and responsibilities that had been dismissed by the court. Watson testified that Pizzurro had given him the money to "decide which way to handle the matter." Watson conceded that Pizzurro was entitled to a refund of the $250 and that he had failed to return the money, but claimed that Pizzurro owed him $3,000 and that her subsequent bankruptcy filing rendered repayment impractical. Based upon these facts, the panel and board found that Watson had violated Prof.Cond.R. 1.15(d).

{¶ 5} With regard to Count Two, the panel and board found that while representing Jane Searcy in a divorce case, Watson was entrusted with a $1,800 government check that was to be divided equally between Searcy and her husband during their pending divorce. Because Watson conceded that he had failed to place these funds into his client trust account, the panel and board found that he had violated Prof.Cond.R. 1.15(a).

**{¶ 6}** And with respect to Count Three, the panel and board found that Watson admitted that he had commingled personal and client funds in violation of Prof.Cond.R. 1.15(a) by depositing a $20,000 gift from his mother into his client trust account. He also issued two checks from his client trust account to pay his personal rent. The panel and the board found, however, that the violation was relatively minor, did not result in harm to any clients, and did not involve deceit or other malfeasance. We adopt these findings of fact and misconduct.

### Sanction

**{¶ 7}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 8}** The sole aggravating factor present in this case is that Watson committed multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(d). Mitigating factors found by the board include the absence of a prior disciplinary record in his more than 25 years of practice, the absence of a dishonest or selfish motive, Watson's timely, good-faith effort to rectify the consequences of his misconduct, and his cooperative attitude toward the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (c), and (d). Judge Dana Preisse, of the Franklin County Court of Common Pleas, Domestic Relations and Juvenile Branch, testified to his good character, stating, "From what I observed in my courtroom, I think he has a fine character and reputation." *See* BCGD Proc.Reg. 10(B)(2)(e).

**{¶ 9}** Watson's psychiatrist, Dr. James Girvin, testified that Watson had symptoms of depression in January 2008. But although Watson's symptoms

would dissipate with prescribed medication, he did not always take the medication as prescribed.

{¶ 10} In 2009, during a period in which Watson had stopped taking his medication, his law clerk, Titus Donnell, graduated from law school, obtained his license to practice law in Ohio, and became a partner in the Watson Law Group. Donnell assumed responsibility for managing the business affairs of the practice, and he implemented changes to make the operation more organized and efficient. While the changes were successful, Donnell believed that Watson exhibited many of the symptoms of attention-deficit/hyperactivity disorder ("ADHD") and that his behavior continued to hinder the practice. Therefore, he suggested that Watson discuss the issue with Dr. Girvin.

{¶ 11} Watson raised Donnell's concerns with Dr. Girvin, who diagnosed him with ADHD. Dr. Girvin testified that he had prescribed Ritalin and that Watson's symptoms improved with the medication. He stated that ADHD could interfere with a person's professional practice because it interferes with the person's ability to prioritize tasks, keep appointments, keep track of paperwork, and keep track of client-billing information.

{¶ 12} Although he spoke generally about the effects of ADHD and Watson's general lack of organizational skills and ability to focus, Dr. Girvin did not express any opinion as to whether Watson's undiagnosed ADHD contributed to the misconduct found by the panel, and he declined to testify that ADHD was a mental disability within the meaning of BCGD Proc.Reg. 10(B)(2)(g). Therefore, the panel and board concluded that Watson had not established all the elements necessary for his ADHD to be considered as a mitigating factor. *See* BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv).

{¶ 13} The board recommends a six-month fully stayed suspension for Watson's conduct, citing several cases in which we imposed such suspensions for minor trust-account violations. *See, e.g.*, *Disciplinary Counsel v. Vivyan*, 125

Ohio St.3d 12, 2010-Ohio-650, 925 N.E.2d 947 (imposing a six-month stayed suspension on an attorney who withdrew approximately $1,500 in unearned settlement proceeds from his client trust account); *Disciplinary Counsel v. Newcomer*, 119 Ohio St.3d 351, 2008-Ohio-4492, 894 N.E.2d 50 (imposing a six-month stayed suspension on an attorney who used his client trust accounts for his personal banking needs, commingled personal and client funds in that account, and overdrew that account on two separate occasions). But in light of the testimony from Donnell and Dr. Girvin, the board recommends that the following conditions be placed upon the stay: "that [Watson] commit no further misconduct; that, within 60 days of the effective date of the Court's order, he submit to an evaluation by a qualified health care professional concerning his ADHD, including a diagnosis and treatment regimen; that he enter into a contract with the Ohio Lawyers Assistance Program (OLAP) that shall be of such duration as OLAP determines to be necessary to ensure that [Watson's] ADHD is no longer hindering his ability to engage in the ethical practice of law; that he comply with OLAP's treatment recommendations as set forth in the contract; and that he be on probation until the latter of the expiration of the OLAP contract or twelve months from the effective date of the Court's disciplinary order."

{¶ 14} While we agree that the offenses in *Vivyan* and *Newcomer* are comparable to those committed by Watson, neither of those cases involved an ongoing mental-health condition that could affect the attorney's present ability to competently, ethically, and professionally practice law. Here, in contrast, Watson has been diagnosed with ADHD and has reported that the treatment prescribed by Dr. Girvin has improved his organizational skills and ability to focus. While Dr. Girvin believes that Watson's report is sincere and that he is compliant with his treatment regimen, he also testified that "[s]ometimes the symptoms of the illness get in the way of the regularity and adherence to taking the medicine, getting refills, all that stuff." Because the very symptoms of his condition may impede

his ability to comply with treatment, and because the record contains some evidence that Watson drifted away from the treatment of his depression in the past, we believe that a one-year fully stayed suspension will better protect the public from future misconduct.

{¶ 15} Accordingly, we suspend David Charles Watson Jr. from the practice of law for one year, but fully stay that suspension on the conditions that he (1) commit no further misconduct, (2) submit within 60 days of this opinion and order to a mental-health evaluation conducted by the Ohio Lawyers Assistance Program ("OLAP") or a qualified mental-health-care professional selected by OLAP, (3) enter into an OLAP contract, the duration of which shall be determined by OLAP, (4) comply with all the treatment recommendations as set forth in the OLAP contract, and (5) serve a period of monitored probation in accordance with Gov.Bar R. V(9) until the expiration of the OLAP contract or 12 months from the effective date of this court's order, whichever is later. If Watson fails to comply with the conditions of the stay, the stay shall be lifted, and he shall serve the full one-year suspension. Costs are taxed to Watson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel; and Bradley N. Frick, for relator.

Steven G. Janik, Audrey K. Bentz, and Colin P. Sammon, for respondent.

_____