DISCIPLINARY COUNSEL *v.* BRICKER.

[Cite as *Disciplinary Counsel v. Bricker,* 137 Ohio St.3d 35, 2013-Ohio-3998.]

*Attorney misconduct—Improper use of client trust account—Using client trust account to pay personal and business expenses—Failing to withdraw earned fees—Failing to have contingent-fee collection clients sign closing statements—Public reprimand.*

(No. 2012-1713—Submitted February 27, 2013—Decided September 18, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-104.

_____

**Per Curiam**.

{¶ 1} Respondent, Dale Elmer Bricker of Youngstown, Ohio, Attorney Registration No. 0004922, was admitted to the practice of law in Ohio in 1961. On December 3, 2007, we suspended Bricker's license to practice law for his failure to register as an attorney for the 2007 to 2009 biennium. *In re Attorney Registration Suspension of Bricker*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305. We granted his application for reinstatement four days later after he paid the applicable registration and reinstatement fees. *In re Reinstatement of Bricker,* 116 Ohio St.3d 1498, 2008-Ohio-290, 880 N.E.2d 97. On December 5, 2011, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified a complaint filed by relator, disciplinary counsel. The complaint alleged that Bricker had committed multiple violations of the Rules of Professional Conduct by failing to prepare closing statements for a personal-injury client and other clients for whom he had agreed to perform work on a contingent-fee basis, commingling personal and client funds in his client trust account, and using that account to pay some personal and operating expenses.

**{¶ 2}** Bricker was served with the complaint and filed an answer. A panel of the board conducted a hearing at which it received the parties' stipulations of fact, stipulated exhibits, and stipulations as to some of the charged misconduct, as well as Bricker's testimony. The panel prepared written findings of fact and misconduct, purportedly dismissed an alleged violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and recommended that Bricker be publicly reprimanded for his misconduct. The board adopted the panel's findings and recommendation in toto.

**{¶ 3}** Relator objects to the dismissal of the alleged violation of Prof.Cond.R. 8.4(h), arguing that contrary to the panel and board's findings, he has proven the violation by clear and convincing evidence. He also contends that the recommended sanction is more lenient than the sanctions we have previously imposed for comparable misconduct. For the reasons that follow, we overrule relator's objections, adopt the board's findings of fact and misconduct, and publicly reprimand Bricker.

### Misconduct

*Improper Use and Maintenance of*

*Client Trust Account*

**{¶ 4}** From 1961 to 1995, Bricker served as in-house counsel for the Edward J. DeBartolo Corporation. Since 1995, he has been a self-employed solo practitioner practicing primarily in the areas of commercial and residential landlord-tenant litigation, real estate, general civil litigation, and collections. Occasionally, he represents plaintiffs in personal-injury matters.

**{¶ 5}** Since August 25, 2010, Bricker has maintained a client trust account at PNC Bank that is designated as an Interest on Lawyers' Trust Accounts ("IOLTA") account. Bricker previously kept personal and client funds in a checking account that he designated as his "trust account" at Farmers National

Bank, but he closed that account in 2009. He maintains his law-office operating account at Farmers National Bank and a personal savings account at Huntington Bank, but he does not have a personal checking account.

{¶ 6} On September 7, 2010, less than two weeks after Bricker opened his IOLTA account, he issued a check from the account to pay a $30 personal expense. Bricker continued to issue checks and to authorize electronic payments from the account for his personal and business expenses until August 2011. He also failed to maintain ledgers of the client funds held in his IOLTA account, and therefore, he did not reconcile his IOLTA account balance with ledger balances for each of his clients.

{¶ 7} In response to a December 9, 2010 letter of inquiry from relator about an overdraft of his IOLTA account, Bricker explained that he had signed a five-year lease for a piece of office equipment and agreed to make the monthly lease payments from his IOLTA account. He stated that unbeknownst to him, the vendor withdrew $573.73 to cover the sales tax for the entire five-year lease, thereby causing the overdraft. Bricker advised relator that he had recognized his mistake, that he had arranged to have the lease payments withdrawn from another bank account, and that he would use his IOLTA account only for client funds. Despite making these representations, he continued to use his IOLTA account to pay for personal and business expenses.

{¶ 8} In preparation for his August 2011 deposition, Bricker thoroughly read the Rules of Professional Conduct, particularly Prof.Cond.R. 1.15. During the deposition, relator and respondent discussed the proper use of an IOLTA account. Bricker later stated that this was the first time he understood what the rules required of him.

{¶ 9} The parties stipulated and the panel found that Bricker's conduct with respect to his IOLTA account violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account,

separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account) as charged in the complaint. The panel, however, found that relator had not presented clear and convincing evidence that Bricker's conduct violated Prof.Cond.R. 8.4(h) and purported to dismiss an alleged violation of that rule. The board adopted the panel's findings of fact and misconduct.

*Failure to Provide Closing Statements to*

*Contingent-Fee Clients*

{¶ 10} Bricker handles a number of collection matters on a contingent-fee basis. He stipulated that in those cases, he executes letters of representation that state that his fee will be one-third of the amount collected on behalf of his clients. He deposits funds he collects on behalf of some of those clients into his IOLTA account and disburses the client's share of the proceeds, while retaining his contingent fee. At the time of the panel hearing, however, his collections practice was limited almost exclusively to matters on behalf of the Ohio attorney general. He explained that in those cases, the debtors remit checks payable to the state treasurer. Bricker then forwards the checks to the attorney general, who later pays his fee.

{¶ 11} Relator charged Bricker with violating Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client, detailing the calculation of the lawyer's compensation, any costs and expenses deducted from the judgment or settlement, and any division of fees with a lawyer not in the same firm) for failing to provide closing statements to his contingent-fee clients.

{¶ 12} Bricker represented Gary Manchester in a personal-injury matter in exchange for a contingent fee of one-third of any recovery. He settled the case for

$7,158 and sent a letter to Manchester with a check from his IOLTA account explaining the distribution of the settlement check—a practice that he also followed with his collection clients. But at no time did he have Manchester or any of his collection clients sign closing statements detailing the calculation of his compensation and the distribution of costs and expenses. Although the parties stipulated to these facts, they did not stipulate that this conduct violated Prof.Cond.R. 1.5(c)(2).

{¶ 13} In his testimony before the panel, Bricker questioned the application of the rule to collection matters, and in its report, the panel noted that one panel member believed that the rule applied only to tort cases. The majority of the panel found, however, that the commentary to Prof.Cond.R. 1.5(c)(1) expresses the intent to expand upon previously aspirational goals to require *all* contingent-fee agreements to be reduced to writing and signed by the client and the lawyer, that Prof.Cond.R. 1.5(c)(2) directs that a lawyer *shall* provide a closing statement that discloses the manner in which the contingent compensation was determined, and that the closing statement *shall* be signed by the client and the lawyer. Therefore, a majority of the panel found that the rule applies to all contingent-fee cases and determined that Bricker's failure to have his contingent-fee collection clients and Manchester sign closing statements detailing the disbursements in their cases violated Prof.Cond.R. 1.5(c)(2). The board adopted the panel's findings of fact and misconduct with respect to this alleged violation.

### Recommended Sanction

{¶ 14} In recommending a sanction, the panel and board considered the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. They also considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 15}** The only aggravating factor advanced by relator is Bricker's four-day attorney-registration suspension in December 2007 for failure to timely submit his certificate of registration and pay the applicable registration fee. *See* BCGD Proc.Reg. 10(B)(1)(a). The panel believed that this suspension resulted from an oversight rather than a deliberate violation of the rules and therefore gave it little weight as an aggravating factor.

**{¶ 16}** As mitigating factors, the parties stipulated and the panel found that Bricker (1) did not act with a dishonest or selfish motive, (2) made a full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings, and (3) presented letters from two judges, three attorneys, and his pastor, who attested to his good character and reputation. *See* BCGD Proc.Reg. 10(B)(2)(b), (d), and (e). The panel found that none of his clients were harmed, that he used earned fees that he had left in his IOLTA account to pay the personal expenses in question, and that he has fully acknowledged the wrongful nature of his conduct and shown remorse. The panel also determined that Bricker had "kept scrupulous records for his collection accounts, although not in the format as required by the Rules of Professional Conduct." Moreover, the panel was impressed by Bricker's long and distinguished career of more than 50 years, his active participation in his church, and his dedication to community service.

**{¶ 17}** Relator recommended that Bricker be suspended from the practice of law for one year, fully stayed on the conditions that he serve one year of monitored probation, complete six hours of continuing legal education in trust accounts and office management, and commit no further misconduct. Bricker argued that a public reprimand will adequately protect the public from future misconduct because he has come to appreciate his duties under the Rules of Professional Conduct during this disciplinary proceeding and has brought himself into compliance with those rules.

{¶ 18} The panel considered a number of cases involving similar misconduct. It noted, however, the substantial mitigating factors and unique circumstances of this case. While acknowledging that after serving for more than 30 years as in-house counsel, Bricker did not appreciate or comply with all the technical ethical responsibilities of a lawyer engaged in solo practice, the panel determined that he had not violated the spirit of those responsibilities because he had provided honest and competent service to his clients and maintained meticulous records, had not harmed any clients, and was extremely remorseful. Believing that his participation in the disciplinary process itself was a sufficient wake-up call, the panel recommended that he be publicly reprimanded for his misconduct. The board adopted the panel's findings and recommended sanction.

## Relator's Objections

### *Objection to the Dismissal of the Alleged Violation of Prof.Cond.R. 8.4(h)*

{¶ 19} In his first objection, relator challenges the panel's purported dismissal[1] of an alleged violation of Prof.Cond.R. 8.4(h), which provides that it is professional misconduct for a lawyer to "engage in *any other conduct* that adversely reflects on the lawyer's fitness to practice law." (Emphasis added.) Relator argues that because he has presented clear and convincing evidence that

---

1. In its report, the panel stated its intention to dismiss the alleged violation of Prof.Cond.R. 8.4(h) based on the insufficiency of relator's evidence. Gov.Bar R. V(6)(G) permits a unanimous panel of the board to order the dismissal of a complaint or an individual count without referring it to the board or this court for review. The rule, however, requires the panel to provide notice to counsel of record and certain interested parties, including disciplinary counsel, the certified grievance committee, and the local bar association of the county in which the respondent resides and maintains an office and the county from which the complaint arose, and the Ohio State Bar Association. The record in this case does not establish that the panel complied with the notice requirements of Gov.Bar R. V(6)(G) when it stated its intention to dismiss the alleged violation of Prof.Cond.R. 8.4(h). Instead, the panel certified its findings of fact and recommendations to the board in accordance with Gov.Bar R. V(6)(H) and (I). Because the board did not order dismissal and provide the notices required by Gov.Bar R. V(6)(J), we treat the purported dismissal as a recommendation that the alleged violation be dismissed and address relator's objection to that recommendation herein. *See, e.g., In re Complaint Against Harper*, 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996); *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31-33.

Bricker kept his earned fees and client funds in his IOLTA account, he has necessarily proven a corresponding violation of Prof.Cond.R. 8.4(h).

{¶ 20} Bricker argues that if this court were to adopt relator's argument, every violation of a Rule of Professional Conduct will necessarily result in a violation of Prof.Cond.R. 8.4(h), thereby depriving the rule of any purpose or effect. Instead, he argues that the rule is a catchall provision that should be used in just two circumstances—(1) situations in which a lawyer's conduct in violation of other more specific rules is so egregious that it adversely reflects on his fitness to practice law and (2) cases in which there is no specific provision prohibiting a lawyer's conduct, yet there is clear and convincing evidence that the conduct is unethical and that it adversely reflects on the lawyer's fitness to practice. We agree.

{¶ 21} Prof.Cond.R. 8.4(h) is a catchall provision. In order to find a violation of Prof.Cond.R. 8.4(h), there must be clear and convincing evidence that the lawyer has engaged in misconduct that adversely reflects on the lawyer's fitness to practice law, even though that conduct is not specifically prohibited by the rules, or there must be proof that the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law.

{¶ 22} This interpretation of Prof.Cond.R. 8.4(h) is evident in cases in which we adopted the board's recommendation to dismiss alleged violations of Prof.Cond.R. 8.4(h) based on insufficient evidence to support a finding that the respondent had engaged in conduct adversely reflecting on his fitness to practice law despite finding other violations of the Rules of Professional Conduct when the violations were not of a particularly egregious nature. *See, e.g., Disciplinary Counsel v. Gallo*, 131 Ohio St.3d 309, 2012-Ohio-758, 964 N.E.2d 1024 (upholding dismissal of a violation of Prof.Cond.R. 8.4(h) when the respondent had not knowingly committed the disciplinary offense and was under considerable

pressure from his employer when he committed the offense); and *Disciplinary Counsel v. Gerchak*, 130 Ohio St.3d 143, 2011-Ohio-5075, 956 N.E.2d 292 (upholding dismissal of a violation of Prof.Cond.R. 8.4(h) finding that the disciplinary offense was not motivated by malicious or selfish reasons).

{¶ 23} On the other hand, the cases cited by relator involve lawyers who stipulated that they violated Prof.Cond.R. 8.4(h). *See Disciplinary Counsel v. Johnston*, 121 Ohio St.3d 403, 2009-Ohio-1432, 904 N.E.2d 892, ¶ 10; *Disciplinary Counsel v. Murraine*, 130 Ohio St.3d 397, 2011-Ohio-5795, 958 N.E.2d 942, ¶ 6; and *Disciplinary Counsel v. LaRue*, 122 Ohio St.3d 445, 2009-Ohio-3604, 912 N.E.2d 101, ¶ 5. The egregious nature of their misconduct also warranted the additional finding that they had engaged in conduct that adversely reflected on their fitness to practice law. Murraine and LaRue actively deposited personal funds into their client trust accounts, and Johnston overdrew his trust account on 22 occasions, bounced a trust-account check issued to a client, and did not have any reliable recordkeeping system in place to account for client funds in his possession, let alone a system that complied with the requirements of Prof.Cond.R. 1.15. *Murraine* at ¶ 4; *LaRue* at ¶ 3; and *Johnston* at ¶ 8-9.

{¶ 24} Bricker, in contrast, left earned fees in his client trust account and paid some personal and business expenses directly from that account instead of issuing checks to himself and then paying his obligations from a personal or operating account. And there is no evidence that he ever used client funds to pay those obligations, as Johnston did. While we have determined that Bricker's conduct violated more specific provisions of the rules, we do not find that this misconduct is so egregious as to constitute a separate violation of Prof.Cond.R. 8.4(h). Furthermore, relator does not argue that Bricker engaged in any additional conduct that adversely reflects on his fitness to practice law. We therefore overrule relator's first objection to the board report and dismiss the alleged violation of Prof.Cond.R. 8.4(h).

*Objection to the Board's Recommended Sanction*

**{¶ 25}** In his second objection, relator contends that Bricker's conduct warrants a six-month conditionally stayed suspension from the practice of law. He argues that we have imposed conditionally stayed suspensions of six months to one year for comparable misconduct. *See, e.g., Columbus Bar Assn. v. Watson*, 132 Ohio St.3d 496, 2012-Ohio-3830, 974 N.E.2d 103; *Disciplinary Counsel v. Murraine*; and *Disciplinary Counsel v. Johnston* (imposing one-year conditionally stayed suspensions); and *Disciplinary Counsel v. Vivyan*, 125 Ohio St.3d 12, 2010-Ohio-650, 925 N.E.2d 947; *Disciplinary Counsel v. LaRue*; and *Disciplinary Counsel v. Fletcher*, 122 Ohio St.3d 390, 2009-Ohio-3480, 911 N.E.2d 897 (imposing six-month conditionally stayed suspensions).

**{¶ 26}** These cases, however, are largely distinguishable from the case currently before us. In *Watson*, we imposed a one-year suspension stayed on conditions on an attorney who deposited client funds into his operating account, deposited a $20,000 gift from his mother into his client trust account, and issued two checks from his client trust account to pay his rent. *Watson* at ¶ 4-6. Notably, Watson had been diagnosed with depression and attention-deficit/hyperactivity disorder, but he did not present sufficient evidence to support a finding that his condition was a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). *Id.* at ¶ 9-12. But given the ongoing nature of these mental-health conditions, their potential to impair Watson's ability to competently, ethically, and professionally practice law, and a previous lapse in treatment, we found that a one-year suspension stayed on conditions, including participation in an evaluation by the Ohio Lawyers Assistance Program and compliance with any treatment recommendations, would best protect the public from future misconduct. *Id.* at ¶ 14-15.

**{¶ 27}** *Murraine, LaRue,* and *Johnston* are distinguishable because in each of those cases, the respondent deposited personal funds into his trust account and

then withdrew funds to pay for personal or operating expenses. *Murraine* at ¶ 4-6; *LaRue* at ¶ 3; and *Johnston* at ¶ 5-7. In *Vivyan,* the respondent withdrew unearned funds from his client trust account for his personal use. *Vivyan* at ¶ 5. In contrast, Bricker's commingling resulted from his failure to timely withdraw fees from his client trust account as they were earned, and his payment of personal expenses directly from his client trust account was more in the nature of a distribution of those earned fees. Moreover, there is no suggestion that he ever misappropriated client funds, either purposely or negligently.

{¶ 28} Of all the cases cited by relator, the facts surrounding the misuse of the trust account in *Fletcher* are most similar to those presented in the present case. Fletcher failed to maintain records to document the identity of client funds in his client trust account for at least 11 years and failed to maintain records of disbursements and balances for each client for at least one year. *Fletcher*, 122 Ohio St.3d 390, 2009-Ohio-3480, 911 N.E.2d 897, at ¶ 4. He also failed to maintain an operating account for at least five years, opting instead to commingle personal and client funds in his client trust account and to use that account to pay personal and business expenses. *Id.* at ¶ 5-6. But in addition to this misconduct, Fletcher also violated DR 5-103(B)(3) (a lawyer shall not provide financial assistance in connection with litigation unrelated to court costs or litigation expenses) when he loaned money to a client for the client's personal expenses.

{¶ 29} The two cases cited by the board in support of its recommendation of a public reprimand are more compelling than the cases cited by relator— *Cincinnati Bar Assn. v. Seibel*, 132 Ohio St.3d 411, 2012-Ohio-3234, 972 N.E.2d 594, and *Medina Cty. Bar Assn. v. Piszczek*, 115 Ohio St.3d 228, 2007-Ohio-4946, 874 N.E.2d 783. Seibel failed to memorialize a contingent-fee agreement in writing, treated his client's retainer and deposit for litigation costs as a nonrefundable retainer and deposited it into his operating account without advising the client that she might be entitled to a refund if Seibel did not complete

the representation, failed to maintain the client's retainer and fees in an interest-bearing client trust account separate from his own funds, and failed to promptly deliver the client's funds and file to her upon the termination of his employment. *Seibel* at ¶ 5-8. The board—and this court—rejected the parties' stipulated sanction of a six-month stayed suspension in favor of a public reprimand, noting that Seibel did not have a prior disciplinary record, did not act with a dishonest or selfish motive, accepted responsibility for his misconduct, and made restitution. *Id.* at ¶ 11-12, 16.

{¶ 30} In *Piszczek*, we publicly reprimanded an attorney who entrusted the day-to-day management of his client trust account to an associate attorney and failed to monitor the account activity. His lack of oversight allowed his associate to issue payments to clients who did not have funds in the client trust account and overpayments to clients who did have money in the account, actions that resulted in an overdraft of more than $7,000. *Piszczek* at ¶ 4. Piszczek also commingled personal and client funds by leaving earned fees in his client trust account and withdrawing them without documenting which client the fees should be attributed to. *Id.* at ¶ 5. No aggravating factors were present. Piszczek engaged in an account audit, reconciled all of the discovered irregularities, made timely restitution, ceased his associate's use of the account, and instituted an effective office accounting system. He also fully cooperated in the disciplinary proceeding and presented evidence of his good character and reputation in the legal community. *Id.* at ¶ 6.

{¶ 31} We are mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368. Here, the board recognized that Bricker had practiced as in-house counsel for more than 30 years before commencing his solo practice and that he

had practiced law for more than 50 years—with only a brief, four-day suspension for his failure to timely complete his attorney registration in 2007. It also recognized his honest and competent service to his clients, the absence of harm to any client, and his genuine remorse for his violations of the Rules of Professional Conduct. On these facts, and in light of *Seibel* and *Piszczek*, in which we publicly reprimanded the attorneys despite the fact that their conduct involved the actual misuse of client funds, the board has recommended that we publicly reprimand Bricker for his conduct in this case.

{¶ 32} Having considered Bricker's misconduct, the applicable mitigating factors, and the sanctions imposed for comparable misconduct, we believe that a public reprimand will adequately protect the public from future harm. Therefore, we overrule relator's objection and adopt the board's recommended sanction.

{¶ 33} Accordingly, we publicly reprimand Dale Elmer Bricker for his improper handling of his client trust account. Costs are taxed to Bricker.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

KENNEDY, J., dissents and would impose a six-month suspension, stayed.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

John B. Juhasz, for respondent.

_____