[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 431.]

DISCIPLINARY COUNSEL *v*. EUNICE A. CLAVNER.

[Cite as *Disciplinary Counsel v. Clavner*, 1997-Ohio-251.]

*Attorneys at law—Misconduct—Public reprimand—Attempting to exonerate oneself from or limit one's liability to client for personal malpractice.*

(No. 96-1995—Submitted October 16, 1996—Decided February 19, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-92.

_____

{¶ 1} On November 24, 1995, the Office of Disciplinary Counsel, relator, charged Eunice A. Clavner of Cleveland, Ohio, Attorney Registration No. 0036747, respondent, with violations of DR 6-102(A) (attempting to exonerate herself from or limit her liability to her client for her personal malpractice), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 1-102(A)(6) (engaging in conduct that adversely reflects on her fitness to practice law). The matter was heard before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), on May 10, 1996.

{¶ 2} According to the testimony adduced at the hearing, a default judgment was entered against respondent's clients, Peter Quinn and Connie Rudolph ("clients"), after respondent failed to appear for a trial date on November 1, 1994. [Exhibit 14, R. 82] A scheduling error in her office led respondent to believe the trial date to be November 3, 1994. When the clients arrived in respondent's office on November 2, 1994 to discuss the following day's trial, respondent informed them of the default judgment. Respondent said that the judgment might be set aside, but if it was not, respondent would pay for damages, including court costs. On that day respondent and the clients entered into a "release" which provided that respondent would pay "[t]he judgment amount in its entirety including court costs

* * * [and] replacement cost of $440.00 for lumber," and the clients would "refrain from taking legal action against" the respondent. Respondent explained the release line by line, but she did not inform the clients that they should seek counsel from another attorney before signing it. Respondent told the clients that they should consult another lawyer with respect to available remedies, and renegotiated certain terms of the release with new counsel employed by the clients. With the agreement of the clients and their new counsel, respondent filed a Civ.R. 60(B) motion in the trial court on November 28, 1994. The motion to vacate the judgment was granted on January 27, 1995 and a new trial was set.

{¶ 3} The panel found that respondent should not have obtained a release from the clients without first informing them that they were in an adversarial relationship with her and advising them that they had a right to consult independent counsel before agreeing to the release. The panel found that in negotiating the release and dealing directly with her clients, who on this issue were adverse to her, respondent violated DR 6-102. The board adopted the panel's findings of fact and conclusions of law and recommended that respondent be publicly reprimanded.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Alvin E.Mathews*, Assistant Disciplinary Counsel, for relator.

*Mary L Cibella* for respondent.

_____

**Per Curiam.**

{¶ 4} DR 6-102(A) provides that, "[a] lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice." We do not read this rule so as to prohibit an attorney from ever raising a defense against or attempting to settle a malpractice action. However, this rule places an attorney on notice that when a client has a potential cause of action for malpractice, the attorney and the client are adversaries. Because the attorney-client relationship

2

places the attorney in a position of dominance, courts and professional ethics committees have said that a potential malpractice claim may be settled only if the client consents after full disclosure, the settlement is not unconscionable, inequitable, or unfair, and, most important, the client is advised to seek independent counsel before signing the agreement. *The Florida Bar v. Nemec* (Fla. 1980), 390 S.2d. 1190; *Committee on Legal Ethics of the West Virginia State Bar v. Cometti* (1993), 189 W.Va.262, 430 S.E.2d 320 (interpreting Rule 1.8[h] of the Rules of Professional Conduct); Opinion of Standing Committee on Legal Ethics of the Virginia State Bar No. 1550 (Oct. 20, 1993); ABA/BNA Lawyers' Manual on Professional Conduct, Ethics Opinions 1991-1995, at 1001:8723; Professional Ethics Commission of the Board of Overseers of the State Bar of Maine, Opinion No.68 (March 14, 1986), 1 Maine Bar Journal, No. 3 (May 1986), 154.

**{¶ 5}** Whatever may have been the intentions of respondent, however little, if any, damage resulted to her clients, and regardless of whether her clients had a cause of action for malpractice, respondent should have been aware that when she began negotiations with her clients for a release of any potential claims against her, she was in an adversarial relationship with them. She should have informed her clients of this adversarial relationship and their right to independent counsel before they signed the release. No good intentions on the part of respondent to spare her clients harm and no careful explanation of the terms of the release can excuse the violation of DR-6-102(A).

**{¶ 6}** We adopt the board's findings and recommendation and hereby reprimand the respondent publicly. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____