CLEVELAND BAR ASSOCIATION *v.* CLAVNER.

[Cite as *Cleveland Bar Assn. v. Clavner,*
99 Ohio St.3d 53, 2003-Ohio-2464.]

(No. 2003–0380—Submitted April 16, 2003—Decided May 16, 2003.)

**Per Curiam.**

{¶ 1} Respondent, Eunice A. Clavner of South Euclid, Ohio, Attorney Registration No. 0036747, was admitted to the practice of law in Ohio in 1986. On February 19, 1997, she received a public reprimand for having attempted to limit her liability for personal malpractice to a couple while she was still representing them. *Disciplinary Counsel v. Clavner* (1997), 77 Ohio St.3d 431, 674 N.E.2d 1369. On April 8, 2002, relator, Cleveland Bar Association, filed another complaint charging respondent with violations of the Code of Professional Responsibility. Relator was unable to obtain a certified receipt of service on respondent and filed notice of the complaint with the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Respondent did not answer, and the Board of Commissioners on Grievances and Discipline appointed a master commissioner to consider the cause on relator's motion for default.

{¶ 2} With respect to Count I of the complaint, the master commissioner found that a client had retained respondent in May 1998 to represent her in a divorce action. The final divorce decree provided for the client's receipt of a monthly check from her ex-husband's retirement pension fund pursuant to a separately prepared qualified domestic relations order ("QDRO"). Respondent was responsible for preparing the QDRO, but the ex-husband's employer rejected her first draft as not in compliance with applicable requirements. Respondent agreed to redraft the QDRO, but she never resubmitted it to the employer and thus did not secure the financial support ordered for her client.

{¶ 3} After respondent did not reply to the client's attempts to reach her, the client filed a grievance with relator. In October 2000, relator's investigator

contacted respondent by telephone, and she admitted during their conversation that she had not completed the QDRO. Respondent promised to follow up and finish the QDRO, but by December 2000, she still had not done so. As of then, respondent's client had missed at least $4,700 in monthly pension payments that she would have been entitled to under the QDRO.

{¶ 4} With respect to Count II, the master commissioner found that another client retained respondent in or around April 1999 to modify a child-support order. By June 1999, the client had paid respondent's $500 fee. The client also gave respondent some of his 1998 tax records and, on her advice, waited until September or October 1999 to attempt to file his federal and state income tax returns. After the client paid respondent, he was never able to get in touch with her again and ultimately learned that she had moved her office without leaving a forwarding address.

{¶ 5} Respondent did no work for her client and admitted this to relator's investigator. She also did not refund any of the fees her client had paid and failed to return the client's financial records, making it difficult for him to file his returns. The client obtained a judgment in small claims court against respondent that she has not paid.

{¶ 6} For failing to complete and resubmit the QDRO and then breaking her promise to finish this work, the master commissioner found respondent in violation of DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 6–101(A)(3) (neglecting an entrusted legal matter); and 7–101(A)(1) (failing to seek client's lawful objectives), (2) (failing to carry out a contract of employment), and (3) (causing client damage or prejudice). On Count II, the master commissioner found that respondent had violated DR 6–101(A)(3), 7–101(A)(1) through (3), and 9–102(B)(4) (failing to promptly pay money a client is entitled to receive). Because respondent apparently received but did not respond to most of relator's investigative inquiries in connection with these two grievances, the master commissioner also found respondent in violation of Gov.Bar R. V(4)(G).

{¶ 7} In recommending a sanction for this misconduct, the master commissioner considered that while respondent may have suffered from depression and anxiety disorders, she did not show evidence of a causal connection between her medical condition and her misconduct. The master commissioner also considered as aggravating factors that respondent had already been publicly reprimanded for ethics violations, her misconduct involved dishonesty, she had not cooperated in the disciplinary investigation and proceedings, and she had not refunded unearned fees paid to her.

{¶ 8} The master commissioner recommended that respondent's license to practice law be suspended indefinitely. The board adopted the master commissioner's findings of misconduct and his recommendation.

{¶ 9} We agree with the findings that respondent violated DR 1–102(A)(4), 6–101(A)(3), 7–101(A)(1) through (3), and 9–102(B)(4), and Gov.Bar R. V(4)(G). We also agree that an indefinite suspension is appropriate. Neglect of legal matters, dishonesty, and lack of cooperation warrant an indefinite suspension. *Disciplinary Counsel v. Washington,* 97 Ohio St.3d 483, 2002-Ohio-6723, 780 N.E.2d 571. Accordingly, respondent is hereby suspended indefinitely from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

---

Denise Platfoot, for relator.