[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bender,* Slip Opinion No. 2014-Ohio-2118.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2118

DISCIPLINARY COUNSEL *v.* BENDER.

[Until this opinion appears in the Ohio Official Reports advance sheets,

it may be cited as *Disciplinary Counsel v. Bender,*

Slip Opinion No. 2014-Ohio-2118.]

*Attorneys—Misconduct—Failing to act with reasonable diligence in representing a client—Conflict of interest—Practicing law while a judge—One-year suspension, stayed on condition.*

(No. 2013-1260—Submitted October 9, 2013—Decided May 27, 2014.)

ON FINAL REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-004.

_____

**Per Curiam**.

{¶ 1}  Respondent, David Bryan Bender of Washington Court House, Ohio, Attorney Registration No. 0037249, was admitted to the practice of law in Ohio in 1986.  Bender was appointed to the bench of the Fayette County Court of Common Pleas, Probate and Juvenile Divisions, in April 2011 and took office in May 2011.

**{¶ 2}** In February 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified the formal complaint of relator, disciplinary counsel, to the board. In the complaint, relator alleged that during Bender's transition from private practice to the bench, he neglected a client's personal-injury case, failed to settle the client's claim or file suit before the statute-of-limitations deadline, and attempted to settle a potential malpractice claim against him without personally advising the client that the statute of limitations had run on the claim and that the client should seek the advice of independent counsel. The complaint further alleged that Bender failed to timely withdraw his earned fees from his client trust account, thereby commingling personal and client funds.

**{¶ 3}** The parties submitted stipulations of fact and stipulated exhibits and agreed that Bender's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.7(a)(2) (prohibiting representation if a lawyer's personal interests will materially limit his ability to carry out appropriate action for the client), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and Jud.Cond.R. 3.10 (prohibiting a judge from practicing law). The parties also stipulated to the dismissal of the remaining violations alleged in the complaint.

**{¶ 4}** A panel of the board conducted a hearing and heard testimony from Bender and two character witnesses. The panel issued a report in which it made findings of fact and adopted the parties' stipulated facts and misconduct. After considering the ethical duties violated, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, the

panel recommended, as stipulated by the parties, that Bender be suspended from the practice of law for one year, all stayed on the condition that he engage in no further misconduct. The board adopted the panel's report in its entirety. Having thoroughly reviewed the record, we adopt the board's findings of fact and misconduct and agree that a one-year stayed suspension is the appropriate sanction for Bender's misconduct.

## Misconduct

### Count I—The Kelly/Everetts Matter

{¶ 5} At the time of his judicial appointment, Bender was pursuing a personal-injury claim on behalf of Carl Everetts. Brenda Kelly was appointed as the guardian for Everetts, her uncle, by the Probate Court of Pickaway County in December 2010. Bender had made a $60,000 demand against the tortfeasor's insurer in January 2011, and in March 2011, the insurer made a counteroffer of $14,000. Bender met with Kelly to discuss the offer and ascertained that her goal was to obtain a settlement sufficient to satisfy all outstanding subrogation claims and cover Everetts's projected funeral expenses. Therefore, they agreed that Bender should attempt to negotiate for a larger settlement. But Bender did not respond to the insurer's offer before taking judicial office.

{¶ 6} Bender advised Kelly that he would need to find another attorney to handle her case when he took the bench but told her that he had someone in mind and would get back in touch with her. Although he spoke with another attorney about handling the case, he did not mention the upcoming statute-of-limitations date and he did not follow up with Kelly. When he closed his private practice, he placed his paper calendar and computer in storage. In November 2011, Bender learned of Kelly's grievance alleging that he had not returned her telephone calls regarding the status of the claim. He reviewed his file and discovered that he had missed the statute of limitations.

**{¶ 7}** Bender called Kelly and, without advising her of the status of the matter or the missed statute of limitations, confirmed that her objective was to obtain a settlement sufficient to satisfy the outstanding subrogation claims and funeral expenses. Believing that she would be satisfied with a prepaid funeral plan, Bender purchased one for $2,266.10 using earned fees held in his client trust account.

**{¶ 8}** Bender then arranged for another attorney to meet Kelly in his judicial chambers, without advising either of them that the statute of limitations for the claim had elapsed. That attorney was not available at the appointed time and Bender could not reach Kelly to reschedule the meeting. When Kelly appeared for the meeting, Bender was not present. His assistant presented her with, and asked her to sign, a "Statement of Resolution" that Bender had drafted with the intention of preemptively settling Kelly's malpractice claim. In that document, Bender informed Kelly that her claim had not been "timely filed," but he did not explain the legal ramifications of that fact, inform her that he had personally paid for the funeral plan, or advise her to seek independent counsel. Kelly refused to sign the statement of resolution. In October 2012, Bender's liability insurer paid Kelly $14,000 and she released Bender from all financial liability arising from their attorney-client relationship.

**{¶ 9}** The board found that Bender had neglected Kelly's legal matter, failed to keep her reasonably informed about the status of the matter, and continued the representation despite the fact that his personal interests conflicted with those of the client once he realized that he had missed the statute-of-limitations date. Therefore, the board found that he violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.7(a)(2), and 8.4(h). The board also found that Bender's actions in this legal matter after he became a judge constituted the practice of law and therefore violated Jud.Cond.R. 3.10.

*Count II—Trust-Account Violations*

{¶ 10} Bender maintained a client trust account while he was in private practice and continued to deposit client funds into the account after he was appointed to the bench. It was not his practice, however, to immediately withdraw his fees from that account as they were earned. But even though his personal and client funds were commingled in the account, there is no evidence that any client was harmed or lost any money as a result of this conduct.

{¶ 11} In addition to commingling personal and client funds in his client trust account, Bender did not distribute all of the client funds in his client trust account until at least December 31, 2011—approximately eight months after he took the bench. Before he closed the account, he had to forward $375 to the Unclaimed Funds Division of the Ohio Department of Commerce because some clients did not cash their refund checks. He testified that his delay in reconciling and closing the account was due to his failure to recognize the "enormity of the task," the need to determine the amount of his earned fees, the need to verify with the clerk of courts whether all fees and court costs had been paid, and, in some cases, the need to locate clients who were entitled to refunds.

{¶ 12} On at least two occasions after becoming a judge, Bender deposited settlement funds belonging to former clients into his client trust account even though he had ceased working on their cases. He testified that he did so at the request of his successor counsel, who did not want to receive tax forms for the insurance proceeds. While he issued checks to the former clients for their portion of the settlement proceeds, he did not promptly disburse the balance of the proceeds that were allocated for fees and expenses.

{¶ 13} The board adopted the parties' stipulations that Bender's commingling of personal and client funds in his client trust account violated Prof.Cond.R. 1.15(a) and that he continued to practice law in violation of Jud.Cond.R. 3.10 by depositing settlement funds into his client trust account

months after he became a judge—and after another attorney had taken over the clients' representation.

{¶ 14} We adopt these findings of fact and misconduct.

## Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 16} As mitigating factors, the parties stipulated and the board found that Bender has no prior disciplinary record, has made a full and free disclosure to the board and demonstrated a cooperative attitude throughout the proceedings, and has presented evidence of his excellent character and reputation for truth, honesty, diligence, and professionalism apart from the conduct at issue in these proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). Fayette County Common Pleas Court Judge Steven Beathard has known Bender as a solo practitioner, a prosecuting attorney, and a fellow judge. He testified, pursuant to subpoena, that Bender was "the most honest and dependable attorney and judge" that he had met in his career and that he had relied heavily on Bender to cover his docket. He stated that Bender has a reputation in both the legal and general communities as a straight shooter. Tracy L. Smith, a colleague and former client, testified that Bender was honest, trustworthy, dependable, and a very good man. Additionally, the parties submitted ten letters from community members attesting to Bender's integrity and involvement in community activities including the Kiwanis Club, Rotary International, YMCA, United Way, and volunteer coaching for the Washington Court House City School District.

**{¶ 17}** The board also found that Bender showed remorse for his misconduct and acknowledged that he had let a lot of people down. He testified that in hindsight he owed Kelly more than he had given her and that he should have communicated promptly with her so that she could search for a new attorney on her own. He further stated that he intends to apologize to her after the disciplinary proceeding is concluded. He also recognized that he should have paid more attention to the details in winding up his client trust account and that he should not have deposited additional funds into his client trust account once he was sworn in as a judge.

**{¶ 18}** Although the parties did not stipulate to any aggravating factors, the board found that Bender acted with a selfish motive by attempting to exonerate himself from his malpractice without fully disclosing it to his client or advising the client to seek independent counsel. *See* BCGD Proc.Reg. 10(B)(1)(b).

**{¶ 19}** The board recommended that Bender be suspended from the practice of law for one year, all stayed on the condition that he engage in no further misconduct. In support of that sanction, the board relies on *Cleveland Bar Assn. v. Berk*, 114 Ohio St.3d 478, 2007-Ohio-4264, 873 N.E.2d 285.

**{¶ 20}** In handling the personal-injury matters of two related clients, Berk failed to file a motion for default judgment as directed by the court, which resulted in the dismissal of those clients' claims for want of prosecution. He gave them each $500 to pay their bills and personal expenses as an advance on the settlement that he hoped to obtain for them. Believing that his clients were unlikely to recover much, if anything, from their refiled suit, Berk gave them each an additional $500 after they executed a settlement agreement waiving any claims arising from his representation.

**{¶ 21}** We found that Berk's conduct violated former DR 5-103(B) (prohibiting a lawyer from providing financial assistance or advancing funds to a

client for expenses other than litigation costs), 6-101(A)(3) (barring an attorney from neglecting an entrusted legal matter), 6-102(A) (barring an attorney from attempting to exonerate himself or limit his liability to his client for personal malpractice), 7-101(A)(2) (prohibiting an attorney from intentionally failing to carry out a contract of professional employment), and 7-101(A)(3) (barring conduct that prejudices or damages a client).[1]  We held that a one-year suspension, stayed on conditions, followed by two years of monitored probation was the appropriate sanction for Berk's misconduct.

{¶ 22} Like Berk, Bender neglected a client's legal matter.  Although he stipulated that he had attempted to settle Kelly's potential malpractice claim against him, the evidence demonstrates that his attempt was unsuccessful, and therefore relator voluntarily dismissed an alleged violation of Prof.Cond.R. 1.8(h).[2]  Nonetheless, we have found that Bender's conduct in attempting to settle any malpractice claim that Kelly might have had against him did violate Prof.Cond.R. 1.7(a)(2) and 8.4(h).  In the past, we have publicly reprimanded an attorney who violated DR 6-102(A) by attempting to negotiate a client's release of malpractice claims against her without advising the client of the inherent conflict of interest and the right to obtain independent counsel.  *See Disciplinary Counsel v. Clavner*, 77 Ohio St.3d 431, 674 N.E.2d 1369 (1997).

---

[1] The Rules of Professional Conduct superseded the Code of Professional Responsibility on February 1, 2007.

[2] While former DR 6-102(A) barred an attorney from *attempting* to exonerate himself or limit his liability to his client for personal malpractice, Prof.Cond.R. 1.8(h) prohibits a lawyer from (1) *making* an agreement prospectively limiting the lawyer's liability to a client for malpractice or requiring arbitration of a claim against the lawyer unless the client is independently represented or (2) *settling* a claim or potential claim for malpractice liability unless the client is advised in writing of the desirability of obtaining independent counsel, the client is given a reasonable opportunity to obtain independent counsel, the agreement is fair, and the client gives informed consent.

{¶ 23} While Berk improperly advanced funds to his client in violation of DR 5-103(B) and engaged in conduct that prejudiced or damaged his clients, *Berk*, 114 Ohio St.3d 478, 2007-Ohio-4264, 873 N.E.2d 285, ¶ 9, Bender's clients did not suffer any harm as a result of his commingling of personal and client funds, and his malpractice carrier ultimately made Kelly and Everetts whole. We have publicly reprimanded an attorney for engaging in comparable trust-account violations when the conduct has not harmed clients. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500 (publicly reprimanding an attorney who left earned fees in his client trust account, paid some personal and business expenses directly from that account, and failed to maintain adequate records or monthly reconciliations of client funds in his possession).

{¶ 24} Although we acknowledge that there are some differences in the conduct and violations at issue in the *Berk* case and this case, we conclude that they are of comparable magnitude. Therefore, we adopt the board's conclusion that a one-year, fully stayed suspension is the appropriate sanction for Bender's misconduct.

{¶ 25} Accordingly, David Bryan Bender is suspended from the practice of law in Ohio for one year, all stayed on the condition that he engage in no further misconduct. Costs are taxed to Bender.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter and Geoffrey Stern, for respondent.

_____