**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Cincinnati Bar Assn. v. Ball,* **Slip Opinion No. 2016-Ohio-785.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-785

CINCINNATI BAR ASSOCIATION *v.* BALL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Ball,* Slip Opinion No. 2016-Ohio-785.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct that adversely reflects on fitness to practice law—Indefinite suspension.*

(No. 2015-0286—Submitted September 1, 2015—Decided March 3, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2014-001.

_____

**Per Curiam.**

{¶ 1} Respondent, Stephen John Ball of Cincinnati, Ohio, Attorney Registration No. 00087242, was admitted to the practice of law in Ohio in 2011.

{¶ 2} In December 2013, relator, Cincinnati Bar Association, filed a complaint with the Board of Commissioners on Grievances and Discipline, alleging

that Ball violated multiple Rules of Professional Conduct arising out of his September 6, 2013 convictions for operating a vehicle while intoxicated ("OVI") and disorderly conduct as well as subsequent false statements of material fact to relator's investigator.[1] After a probable-cause panel certified that complaint to the board, relator amended the complaint to add allegations that Ball overdrew his client trust account and engaged in the practice of law while his license was inactive.

{¶ 3} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors but did not agree to a recommended sanction. Following a hearing, where a panel of the board heard testimony from Ball and one character witness and received 13 exhibits, the panel issued a report adopting the parties' stipulations with one exception—it declined to find that Ball's alcohol addiction qualified as a mitigating factor. On those findings, the panel recommended that Ball be indefinitely suspended from the practice of law. The board adopted the panel's findings and recommendation.

{¶ 4} Ball submitted six objections to the board's report, challenging the board's failure to accord any mitigating effect to his diagnosed alcohol dependency and disputing the board's recommended sanction. For the reasons that follow, we overrule Ball's objections, adopt the board's findings of fact and misconduct, and indefinitely suspend Ball from the practice of law.

**Misconduct**

*OVI, Disorderly Conduct, and False Statements to Relator's Investigator*

{¶ 5} One night in December 2012, Ball attended a basketball game where he consumed a beer and a Christmas party where he consumed seven or eight beers. Although he was admittedly too inebriated to drive, he started to drive home. A Hamilton County sheriff's deputy observed his vehicle and attempted to execute a

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

traffic stop, but Ball continued driving to his subdivision with the deputy in pursuit. Ball came to a stop at the end of a cul-de-sac near the driveway to his home, exited his vehicle, and began to run as the deputy yelled for him to stop. After Ball eventually complied with the order and allowed the deputy to catch up with him, the deputy physically restrained and arrested him.

{¶ 6} Ball was charged with OVI, obstructing official business, driving under suspension, and a felony count of receiving stolen property for using a stolen license plate on his vehicle. Ball eventually pleaded guilty to OVI and disorderly conduct and advised relator of his plea. He was sentenced to probation, ordered to participate in a residential-treatment program, and granted driving privileges only with the use of an ignition-interlock device.

{¶ 7} In September 2013, relator's investigator questioned Ball about the stolen license plate on his vehicle. Ball stated that he had purchased the car from his father in 2011 and insisted that his father's license plate remained on the vehicle, but he could not adequately explain why the license-plate number did not match his father's registration documents. He eventually admitted that he knew the license plate was stolen when he obtained it from a friend. He also admitted that this was the second stolen license plate that he had obtained and used with the intent to prevent law-enforcement officers from discovering that he was driving while his driver's license was under suspension.

{¶ 8} The parties stipulated and the board found that Ball violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) by knowingly driving a vehicle with stolen license plates, concealing from law enforcement the fact that he did not have a valid driver's license, driving while intoxicated, and running from a law enforcement officer. In addition, the parties stipulated and the board found that he violated Prof.Cond.R.

8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter) for claiming ignorance about the stolen plates when he knew they were stolen.

{¶ 9} Although the complaint charged Ball with a violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) with respect to this conduct, neither the parties nor the board addressed that allegation. However, having considered Ball's efforts to flee a lawful traffic stop and conceal the fact that he was driving while his license was under suspension as well as his lie about receiving and using stolen license plates, we conclude that his conduct is sufficiently egregious to warrant that additional finding here. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 20 ("Prof.Cond.R. 8.4(h) * * * is a catchall provision that [applies to] situations in which a lawyer's conduct in violation of other more specific rules is so egregious that it reflects on his fitness to practice law").

*Client Trust Account Overdrafts*

{¶ 10} In addition to his OVI-related misconduct, Ball stipulated that he agreed to receive settlement payments on behalf of Paul Duncan after another attorney obtained a settlement on Duncan's behalf. Ball processed those payments through his client trust account and charged no fees or expenses for the service. After the obligor fell behind on his payments, he made a partial payment toward his arrearage and assured Ball that he would send a second payment to bring his obligation current. Based on that assurance, Ball issued a check to Duncan for the full amount with knowledge that the account did not contain sufficient funds. After the obligor failed to send Ball a second payment, Ball issued a check for the amount he had actually received on the client's behalf and obtained a temporary stop-payment order for the other check. But because he failed to go to the bank to

finalize the stop-payment order as instructed, the bank processed the check, causing his client trust account to become overdrawn.

{¶ 11} Consistent with the parties' stipulations, the board found that Ball caused his client trust account to be overdrawn twice more in connection with his effort to establish a nonprofit organization with an accountant. Ball issued two checks on two different closed bank accounts and deposited them into his client trust account, causing that account to become overdrawn when the bank assessed fees for the bad checks. He explained that he took over his own accounting when his paralegal took another job and was unaware of which bank accounts remained open and which had been closed.

{¶ 12} The parties stipulated and the board found that Ball violated Prof.Cond.R. 8.4(h) by demonstrating an inability to effectively manage his own financial accounts and by writing a check from his client trust account when he knew that there were insufficient funds in the account.

*Practicing Law While Registered Inactive*

{¶ 13} Ball's Ohio attorney registration was inactive from January 31, 2014, to March 7, 2014, but his voicemail and website remained active, albeit with all of his advertising removed. On February 13, 2014, he spoke with an insurance adjuster on behalf of one of his clients and discussed a pending case without informing the adjuster that he was no longer an active attorney. And on March 1, 2014, he wrote to the client to terminate his representation and return the client's file, but his letter also discussed his opinions about the client's case and the feasibility of certain actions going forward. Ball did not change his letterhead to reflect his inactive status and failed to inform any of his clients that his license was inactive when he told them that he would be "on hiatus" for a month.

{¶ 14} The parties stipulated and the board found that this conduct violated Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction).

**Recommended Sanction**

{¶ 15} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 16} As mitigating factors, the board adopted the parties' stipulations that Ball does not have a prior disciplinary record, self-reported his OVI, and submitted evidence of his good character and reputation. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e).

{¶ 17} The parties also stipulated that Ball was struggling with an addiction to alcohol at the time of his December 2012 OVI offense but noted that there had been no determination by a substance-abuse counselor that such dependency contributed to his misconduct in 2014. Consistent with the parties' stipulations, the board found that Ball was an admitted alcoholic and that he had withdrawn his application to take the July 2008 bar exam after the Board of Commissioners on Character and Fitness exercised its authority to conduct an additional, sua sponte investigation into his character and fitness.

{¶ 18} As the parties had stipulated, the board also found that Ball has had multiple encounters with law enforcement as a result of his alcohol use, including an August 2000 charge for underage consumption, a December 2003 charge of public intoxication that was later dismissed, and an April 2007 open-container violation. He also has a history of OVI offenses dating back to 2002 when he was twice charged with OVI, the second offense occurring while his driver's license

---

[2] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

was under suspension. And he was arrested and charged in May 2007 with OVI and possession of drug paraphernalia and an unloaded firearm after leaving a Cincinnati Reds game. After pleading guilty to the OVI and a misdemeanor weapons charge, he was ordered to serve ten days in a residential-treatment program followed by an intensive outpatient program and probation.

{¶ 19} Ball participated in the Ohio Lawyers Assistance Program ("OLAP") following his 2007 arrest, but approximately nine months after his arrest he began drinking again and failed to complete his contract. On June 27, 2013, he entered into a second OLAP contract—a five-year recovery contract—after his 2012 OVI, but he has failed to comply with its terms. His last contact with OLAP was on December 2, 2013.

{¶ 20} Despite having acknowledged Ball's extensive history with alcohol addiction, the board declined to accord it any mitigating effect, stating that "neither party submitted evidence that alcohol dependency contributed to any misconduct." The board did, however, find that his multiple offenses, his false statements during the disciplinary process, and his failure to comply with the terms of his OLAP recovery contract were aggravating factors. *See* BCGD Proc.Reg. 10(B)(1)(d) and (f).

{¶ 21} Ball urged the board to recommend an 18- to 24-month suspension with six months stayed on conditions. Relator, on the other hand, argued that Ball should be indefinitely suspended from the practice of law. The board recommends that we indefinitely suspend Ball from the practice of law, that he be required to successfully complete an OLAP-approved substance-abuse-treatment program, and that upon reinstatement to the practice of law, he be required to complete six hours of continuing legal education related to law-office management and accounting.

**Ball's Objections to the Report and Recommendation**

{¶ 22} Ball objects to the board's decision to reject his alcohol dependency as a mitigating factor and also argues that its recommended sanction is not supported by the record or our precedent.

{¶ 23} Ball argues that contrary to the board's finding, he presented evidence sufficient to establish his alcohol dependency as a mitigating factor but that the board erroneously found that (1) neither party submitted any evidence that his alcohol dependency contributed to any of his misconduct, (2) expert testimony was required to establish a causal connection between his alcohol dependency and his misconduct, and (3) the mitigating factor was not relevant because he admitted that it did not apply to all of his misconduct. He also suggests that the board disregarded his evidence of alcohol dependency because the information did not come from an OLAP professional.

{¶ 24} BCGD Proc.Reg. 10(B)(2)(g) provided that a chemical dependency may be considered in mitigation if (i) a qualified health-care professional or alcohol/substance-abuse counselor has diagnosed the condition, (ii) there is a determination that the condition contributed to cause the misconduct, (iii) there is certification that the respondent has successfully completed an approved treatment program, and (iv) a qualified health-care professional or alcohol/substance-abuse counselor has issued a prognosis that the attorney will be able to return to the competent, ethical, and professional practice of law under certain specified conditions.

{¶ 25} We acknowledge that Ball presented *some* evidence relevant to each of the factors enumerated in BCGD Proc.Reg. 10(B)(2)(g). There is compelling evidence that he has been diagnosed with alcohol dependency and that he has successfully completed an approved treatment program. BCGD Proc.Reg. 10(B)(2)(g)(i) and (iii).

**{¶ 26}** While respondents in these proceedings often submit the testimony of their treating professionals (either live or by affidavit) to establish that a chemical dependency or mental disability contributed to their misconduct, the rule does not expressly require such evidence, nor have we rigidly required it, *see, e.g.*, *Columbus Bar Assn. v. Allerding*, 123 Ohio St.3d 382, 2009-Ohio-5589, 916 N.E.2d 808, ¶ 17 (finding sufficient evidence of a causal connection between the respondent's diagnosed alcohol dependency and his misconduct, which consisted mainly of neglect and failure to competently represent several clients, based on the "respondent's testimony that he was intoxicated daily during the events at issue").

**{¶ 27}** Here, however, Ball has only submitted his own self-serving testimony that his alcohol dependency is causally related not only to his OVI offense but also to his use of stolen license plates. While the causal relationship between his alcohol dependency and his OVI offense is readily apparent, the relationship between his alcohol dependency and his decision to receive stolen license plates and use them on his vehicle for an extended period of time is not as clear—particularly in light of his testimony that he was binge drinking on weekends but remained able to practice law because he never drank during the week. Thus, the board could reasonably have determined that Ball presented insufficient evidence to establish a causal connection with respect to that conduct.

**{¶ 28}** But even if the board had found that Ball's testimony was sufficient to establish that his alcohol dependency is causally related to both his OVI and his use of stolen license plates, we find that he has not submitted sufficient evidence to establish that he will be able to return to the competent, ethical, and professional practice of law under specified conditions as required by BCGD Proc.Reg. 10(B)(2)(g)(iv). Ball did submit documents that address his prognosis and his ongoing treatment for alcohol dependency, but those documents do not adequately address the conditions under which he may resume the practice of law. The first document is an unsigned copy of a June 19, 2013 letter from Kelly Rogan, M.S.,

L.S.W., L.I.C.D.C., in which she stated that Ball had entered the continuing-care phase of his treatment program on April 15, 2013, and that he had agreed to attend that program for one year—which would have expired more than three months before Ball's July 21, 2014 disciplinary hearing. But in her July 8, 2014 follow-up letter, Rogan states that she would consider using Ball as a group facilitator "when he completes [treatment] because of the commitment he has shown to his program and his helpfulness to others along the way," but she offered no explanation about the nature of his ongoing treatment.

{¶ 29} A July 18, 2014 affidavit executed by Steve Lawson, the Licensed Independent Chemical Dependency Counselor who diagnosed Ball's alcohol dependency in 2013, is perhaps the most important document that Ball has submitted regarding his prognosis and the conditions under which he will be able to return to the practice of law. It states, "Mr. Ball's alcoholism will not preclude him from returning to competent, ethical professional practice *if he continues to treat his alcoholism*." (Emphasis added.) Yet, with the exception of Ball's own testimony that at the time of his disciplinary hearing he was attending one small group session and at least two Alcoholics Anonymous meetings each week, the record is devoid of any evidence setting forth the requirements of that treatment.

{¶ 30} Moreover, if we were to find that Ball had established his alcohol dependency as a mitigating factor, it would only serve to mitigate a small portion of his misconduct. And that misconduct and mitigating evidence would still be overshadowed by Ball's subsequent misconduct—lying to relator's investigator about his use of stolen license plates, writing bad checks, overdrawing his client trust account, and practicing law while his license was inactive—all of which occurred while he was sober and in recovery.

{¶ 31} Although participation in the OLAP program is not expressly required for an attorney to establish a chemical dependency or mental disability as a qualifying mitigating factor, Ball's abandonment of his five-year OLAP recovery

10

contract just six months after he voluntarily entered into it weighs heavily as an aggravating factor.

{¶ 32} The board relied on two cases to support its recommendation that Ball be indefinitely suspended from the practice of law: *Stark Cty. Bar Assn. v. Zimmer*, 135 Ohio St.3d 462, 2013-Ohio-1962, 989 N.E.2d 51; and *Columbus Bar Assn. v. Larkin*, 128 Ohio St.3d 368, 2011-Ohio-762, 944 N.E.2d 669.

{¶ 33} Zimmer's misconduct arose from three separate incidents involving his unlawful operation of a motor vehicle—including fleeing the scene of an accident, driving without a license, and OVI. *Zimmer* at ¶ 5-10. He also failed to abide by multiple court orders, including a subpoena to appear for deposition in the resulting disciplinary matter, and two bench warrants were issued for his arrest. *Id.* at ¶ 7-11. Although Zimmer presented evidence of "sporadic" contact with OLAP, there was no evidence of a formal diagnosis or that Zimmer was participating in an approved treatment program. *Id.* at ¶ 15. Recognizing that Zimmer likely suffered from untreated alcohol or substance abuse that interfered with his personal conduct but did not interfere with his work, we indefinitely suspended him from the practice of law and conditioned his reinstatement on the submission of proof of compliance with an established substance-abuse program and a prognosis of his capability to return to the competent, ethical, and professional practice of law. *Id.* at ¶ 16-18.

{¶ 34} In *Larkin*, after the respondent was seriously injured in an automobile accident, police officers discovered a used crack-cocaine pipe and used heroin syringes in her automobile. *Larkin* at ¶ 5. She was indicted for possession of cocaine and heroin and entered a diversion program, but when she did not comply with the terms of that program, her criminal case was returned to the active docket. *Id.* Larkin testified that the treatment she had received for her longstanding problem with drugs and alcohol had been unsuccessful, and although relator urged her to contact OLAP during the pendency of her disciplinary matter, she never did. *Id.* at ¶ 6. We indefinitely suspended Larkin for her misconduct and conditioned

her reinstatement on her successful completion of a substance-abuse-treatment program. *Id.* at ¶ 12.

**{¶ 35}** Ball contends that the indefinite suspension recommended by the board is not supported by the record or our precedent and argues that his conduct is most comparable to cases in which we imposed sanctions ranging from six months fully stayed to two years partially or fully stayed on conditions. We do not find the cases he has cited to be instructive in this matter because none of them addresses the practice of law while an attorney's license is inactive, nor do they present the lengthy history of alcohol dependency, treatment, and relapse present in this case.

**{¶ 36}** In light of Ball's multiple instances of misconduct, his significant history of alcohol dependency, and our concerns as to the paucity of the evidence regarding the treatment he requires going forward, we agree that an indefinite suspension is the appropriate sanction in this case. Therefore, we overrule Ball's objections, and we adopt the board's findings of fact and misconduct and its recommended sanction.

**{¶ 37}** Accordingly, Stephen John Ball is indefinitely suspended from the practice of law in Ohio. In addition to complying with the requirements for reinstatement set forth in Gov.Bar R. V(25), he shall be required to successfully complete an OLAP-approved substance-abuse-treatment program and comply with the terms of his June 27, 2013 OLAP contract. And upon reinstatement, he shall be required to complete six hours of continuing legal education related to law-office management and accounting as part of his professionally required continuing-legal-education requirements pursuant to Gov.Bar R. X(3). Costs are taxed to Ball.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

PFEIFER and KENNEDY, JJ., dissent and would impose a suspension of two years with six months stayed on conditions.

_____

Paul M. Laufman, Sarah Tankersley, and Edwin W. Patterson III, General Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., George D. Jonson, and Brian M. Spiess, for respondent.

_____