**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Port*, **Slip Opinion No. 2024-Ohio-5566.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5566

DISCIPLINARY COUNSEL *v*. PORT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Port*, Slip Opinion No. 2024-Ohio-5566.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including misappropriating client funds—Permanent disbarment.*

(No. 2023-1512—Submitted September 17, 2024—Decided November 27, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-034.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Gregory Darwin Port, of Columbus, Ohio, Attorney Registration No. 0043838, was admitted to the practice of law in Ohio in 1990.

**{¶ 2}** In July 2004, we indefinitely suspended Port for misappropriating client funds, engaging in dishonesty, neglecting entrusted legal matters, and failing to cooperate in the investigation of his misconduct. *Columbus Bar Assn. v. Port*, 2004-Ohio-3204. He was reinstated to the practice of law in Ohio in August 2011. 2011-Ohio-4060.

**{¶ 3}** On October 26, 2023, relator, disciplinary counsel, filed a complaint charging Port with professional misconduct arising from his allegedly misappropriating client funds, falsifying bank records, making false statements to a tribunal, representing a client when he had an impermissible conflict of interest, charging excessive fees, and failing to provide competent representation. On November 30, pursuant to Gov.Bar R. V(14)(A), the Board of Professional Conduct filed a certification of default in this court alleging that Port had failed to answer disciplinary counsel's complaint. 2023-Ohio-4668, ¶ 1. We ordered an interim default suspension pursuant to Gov.Bar R. V(14)(B)(1), effective December 22, 2023. *Id.* at ¶ 2. On January 30, 2024, we sua sponte ordered Port to show cause why he should not be found in contempt for failing to file an affidavit of compliance in accordance with our December 22, 2023 order. Port did not file the affidavit or otherwise respond, and we held him in contempt on February 28, 2024. 2024-Ohio-719. On March 18, disciplinary counsel moved to remand the case to the board to begin default proceedings seeking permanent disbarment under Gov.Bar R. V(14)(F). We granted the motion on April 12. 2024-Ohio-1384. On remand, this matter was referred to a board commissioner for disposition.

**{¶ 4}** The commissioner found by clear and convincing evidence that Port was in default for failing to answer the complaint and that he had committed professional misconduct. The board adopted the commissioner's findings of fact, conclusions of law, and recommended sanction—that Port be permanently disbarred from the practice of law in Ohio and that he be ordered to pay restitution

within 90 days of the final disciplinary order in this matter. Port did not file objections or any other response.

{¶ 5} After a review of the record and our caselaw, we adopt the board's findings of misconduct and recommended sanction.

## MISCONDUCT

### *Count 1—The VanPelt Matter*

{¶ 6} In September 2018, Port was appointed administrator for the estate of Jean VanPelt. *Estate of VanPelt*, Monroe C.P. No. 10465. While acting as administrator, Port wrote 15 checks to himself, executed 18 wire transfers to himself, withdrew $40,000 in cash, and made multiple transfers to an unrelated estate. These transactions totaled $307,869. Subsequently, Leona Young, VanPelt's sister, replaced Port as the administrator of her sister's estate. Port gave Young a $260,055.65 cashier's check that allegedly constituted the entirety of the estate's funds, but he did not provide an accounting, so there was no information from which to check the legitimacy of any of the transactions he had made. Young then requested the bank statements for the estate. Port fabricated bank records to conceal his misappropriation of estate funds. On June 3, 2023—after realizing his deception had been discovered—Port self-reported his misconduct to disciplinary counsel.

{¶ 7} The board found that Port's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separately from the lawyer's own property), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Port's fabricating bank records to conceal his misappropriation of estate funds is sufficiently egregious to warrant a finding that his misconduct adversely reflects on

his fitness to practice law. *See Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21, 23; *see also Lorain Cty. Bar Assn. v. Robinson*, 2024-Ohio-1657, ¶ 15. The commissioner determined that there was insufficient evidence to establish that Port violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal) and dismissed that charge. We adopt the board's findings of misconduct related to Count 1.

*Count 2—The Renz Matter*

{¶ 8} On March 4, 2019, a probate court appointed Port as administrator of the estate of Stephen K. Renz. *Estate of Renz*, Franklin C.P. No. 596320. The estate's primary asset was real property located on Miller Avenue in Columbus, Ohio. Port, acting as the estate's administrator, paid Estate Restoration Services, L.L.C.—a company owned by Port's wife—$6,500 to clean the Miller Avenue property. On March 8, Port's wife formed another limited-liability company— Wedgewood Holdings, L.L.C. In October, Port, again acting as the estate's administrator, sold the Miller Avenue property to Wedgewood Holdings for $21,600. In early December, Wedgewood Holdings resold the Miller Avenue property for $195,000. On December 26, Port moved the probate court to approve an appraisal value for the property and to order its sale. Port did not bring to the probate court's attention that he had already sold the property to his wife's company or that her company had resold it. The probate court held a hearing on Port's motion on February 10, 2020. Under oath, Port disclosed the two sales of the property and that his wife owned Wedgewood Holdings and Estate Restoration Services. The probate court removed Port as the administrator of the estate.

{¶ 9} The board found that Port's conduct violated Prof.Cond.R. 1.7(a)(2) (prohibiting a lawyer's accepting or continuing the representation of a client if there is a substantial risk that the lawyer's personal interests will materially limit his ability to carry out appropriate action for the client), 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client or knowingly acquiring an

ownership, possessory, security, or other pecuniary interest that is adverse to a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client), 3.3(a)(1), 8.4(d), and 8.4(h). Port's dishonesty toward the probate court and his continued representation of the estate while he had a conflict of interest that materially limited his ability to appropriately carry out the representation are serious enough to warrant a finding that his misconduct adversely reflects on his fitness to practice law. *See Bricker* at ¶ 21, 23. We adopt the board's findings of misconduct related to Count 2.

*Count 3—The Sink Matter*

**{¶ 10}** Nichelle Ennis contacted Port to locate and protect inheritances she believed her aunt, Anne Sink, could claim. Port found a total of $28,885.13 in inheritances from three different deceased relatives, and he purportedly intended to put that money in a trust. However, Sink passed away before a trust was formed, and the money became part of her estate. Port used that money to pay $14,100.62 in funeral expenses, but he falsely represented to Ennis, and later, to disciplinary counsel, that he had paid $14,784.51. Port kept the remaining estate balance, which was $437.88 after deducting the $14,346.63 he billed for legal work.

**{¶ 11}** Regarding the trust, Port claimed in his initial response to disciplinary counsel's inquiry that he had been unable to create the trust before Sink died but that he had intended to put $20,000 into a special-needs trust. But by statute, Sink was too old to create such a trust. Nonetheless, Port billed the estate $325 an hour for working 13.6 hours on the trust (for a total of $4,420).

**{¶ 12}** The board found that Port's conduct violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 8.4(c). We adopt the board's findings of misconduct related to Count 3.

*Count 4—The Imhoff Matter*

**{¶ 13}** In 2021, Esther Imhoff and her granddaughter, Katelyn Neil, hired Port and paid him $9,400 to create a Medicaid Asset Protection Trust and/or a Qualified Income Trust for Imhoff. Several months later, after realizing that little to no progress was being made in the case, Neil demanded a meeting with Port. She subsequently attended a meeting with Port in which she felt he was talking in circles and was unable to answer basic questions. After another month passed without any progress in the case, Neil terminated the representation. During the representation, Port did not create a trust for Imhoff and did not refund any portion of the $9,400 fee.

**{¶ 14}** The board found that Port's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.5(a),[1] and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment). We adopt the board's findings of misconduct related to Count 4.

## SANCTION

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 16}** As aggravating factors, the board found that Port had previously been disciplined, acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, harmed

---

1. The board's report states that Port violated Prof.Cond.R. 1.5 but does not specify a subsection. However, the parenthetical in the board report that follows the stated rule violation correlates to subsection (a).

vulnerable clients, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(1), (2), (3), (4), (5), (7), (8), and (9). As for mitigating factors, the board found none.

{¶ 17} Disbarment is the presumptive sanction for the misappropriation of client funds. *Trumbull Cty. Bar Assn. v. Kafantaris*, 2009-Ohio-1389, ¶ 14, citing *Cleveland Bar Assn. v. Dixon*, 2002-Ohio-2490, ¶ 15.

{¶ 18} The board recommends that this court permanently disbar Port and order him to pay restitution in the amount of $4,857.88 to Sink's estate and $9,400 to Imhoff. The board found that there was insufficient evidence to establish whether the $260,055.65 Port turned over was full restitution in the VanPelt matter, so it did not recommend that we order Port to make restitution to the VanPelt estate. It determined that the probate court handling that estate is in the best position to determine the amount Port owes the estate. And regarding the Renz matter, disciplinary counsel asserted that "the monetary issue was considered and settled prior to the complaint in this case." Thus, disciplinary counsel did not request that restitution be ordered, and the board did not recommend that we order restitution.

{¶ 19} The board notes the egregious nature of Port's misconduct and the presence of significant aggravating factors, which include the indefinite suspension previously imposed on him by this court in 2004 for his misappropriation of client funds, dishonesty, neglect of entrusted legal matters, and failure to cooperate in the investigation of his misconduct. In support of imposing the presumptive sanction of disbarment, the board primarily relies on *Columbus Bar Assn. v. Magee*, 2018-Ohio-3268.

{¶ 20} In *Magee*, we permanently disbarred an attorney who engaged in misconduct similar to Port's. The attorney in *Magee* was appointed to be the trustee of his client's trust by a Delaware court after that court adjudicated his client incompetent. *Id.* at ¶ 5-6. As trustee, Magee amended the trust without the approval of the court, paid himself unauthorized fees, and improperly transferred funds from the trust into his personal account. *Id.* at ¶ 8, 11-12. After his client's death, Magee

was removed as trustee. *Id.* at ¶ 10, 12. Magee initiated probate proceedings and executed documents appointing himself executor of the estate. *Id.* at ¶ 13. As executor, he transferred his deceased client's property into the trust and then signed a deed as the trustee for the trust transferring the property to himself as executor of the estate. *Id.* In addition, in an attempt to conceal that he had transferred funds from the trust to his personal bank accounts, he provided a fabricated trust-account statement to the beneficiaries. *Id.* at ¶ 14.

{¶ 21} Like the attorney in *Magee*, Port used a position of trust to misappropriate client funds and assets and engage in unethical transactions. Additionally, Port similarly fabricated statements to conceal his misconduct, made misrepresentations to the court, failed to make restitution, and failed to fully participate in the disciplinary process. But the conduct in this case is more egregious than that in *Magee*. Port's misconduct affected more clients, and Port took fees from clients for work that he did not do (Imhoff) and for work that he should have known was futile (Sink and Ennis), and failed to refund their money, which is tantamount to theft, *see Disciplinary Counsel v. Sigall*, 14 Ohio St.3d 15, 17 (1984). Moreover, Port previously received an indefinite suspension for similar misconduct. Port's repeated theft from clients and his dishonesty with clients and tribunals show that he lacks the character and integrity required of a member of the bar. We conclude that disbarment is warranted in this case.

## CONCLUSION

{¶ 22} Accordingly, Gregory Darwin Port is permanently disbarred from the practice of law in Ohio and is ordered to make restitution in the amount of $4,857.88 to the Sink estate and $9,400 to Esther Imhoff within 90 days of this order. Costs are taxed to Port.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Benjamin B. Nelson, Assistant Disciplinary Counsel, for relator.

_____